FRANK AND THELMA ORLOSKI, PLAINTIFFS, v. PLANNING BOARD OF THE BOROUGH OF SHIP BOTTOM, DEFENDANT.

Superior Court of New Jersey
Law Division Ocean County

Decided March 14, 1988.

*Thomas C. McCoy* for plaintiffs Frank and Thelma Orloski (*Woodland* and *McCoy*, attorneys).

*Granville D. Magee* for defendant Planning Board of the Borough of Ship Bottom (*Magee* and *Graham*, attorneys).

SERPENTELLI, A.J.S.C.

The interesting question raised by this case is whether a board of adjustment may condition a variance approval on the agreement of the owner not to subdivide the property involved and, if such a condition is invalid, whether the owner may subsequently disregard the condition and still retain the benefits of the variance.

This action in lieu of prerogative writs arises out of a denial by the Planning Board of the Borough of Ship Bottom of two minor subdivision applications relating to premises known as Lot 4, Block 38. The southerly property line fronts on Twenty First Street. The lot has a frontage of 80 feet and a depth of 100 feet. Presently, there are two dwellings located on it. On the easterly side is a two story residential dwelling set back approximately 23 feet from the front property line. On the westerly side is a one and one-half story dwelling located approximately two feet from the rear property line. The property is located in a zone which requires a minimum lot area of 4,800 square feet and a minimum frontage of 60 feet.

The present owners have made numerous applications to the local boards since they acquired the property in 1978. At that time, two dwellings were located on the premises. Both were

situated on the westerly side of the lot. In the front of the property was a one story dwelling with an attic which is referred to in the record as the "main building." At the rear of the property was a converted garage referred to in the record as a "cottage." In 1979, the plaintiffs applied to the Board of Adjustment for permission to improve the cottage by the addition of a deck and the installation of dormers. They also sought to move the main building from the westerly side to the easterly side of the property. The application was granted. However, the plaintiffs only completed the improvements to the cottage because they found that the cost of relocating the main dwelling was excessive and that it was structurally unsound.

In 1983, the plaintiffs again applied to the Board of Adjustment. They sought permission to demolish the main dwelling on the westerly side of the premises and to construct a larger two story single family residence on the easterly side of the premises. That application was granted. However, the Board imposed a condition which is at the core of the controversy before the court. The resolution recites that the applicants agreed not to seek a subdivision of the property into two nonconforming lots and that the approval was given with the understanding that the parcel would continue as one lot improved with the proposed main dwelling and the existing rental cottage.

On May 8, 1985, notwithstanding their promise not to subdivide, the plaintiffs applied to the Planning Board to divide the 80 foot lot into two 40 foot lots. They also sought to demolish the rental cottage on the westerly side of the premises and to replace it with a new dwelling. The application was denied. The plaintiffs then filed a prerogative writs action. While the action was pending and without knowledge of the court, the plaintiffs filed a new subdivision application with the Planning Board which again sought to subdivide the lot, but eliminated the request for the construction of a new dwelling on the

westerly portion of the premises.[1] That application was also denied and the plaintiffs amended their complaint to challenge the second denial.

Subsequently, because the parties were unable to provide a transcript of the 1983 proceedings, the court remanded the application to establish when the garage was converted for residential use. The purpose of the remand was to clarify the record so that the court could determine whether, aside from the condition prohibiting a subdivision, the plaintiffs would be entitled to a subdivision because the existing dwellings predated the adoption of any zoning ordinance in the borough. *Beers v. Board of Adjustment of Wayne Township,* 75 *N.J.Super.* 305 (App.Div.1962); *MacLean v. Planning Board of Brick Tp.,* 94 *N.J.Super.* 288 (App.Div.1967). A hearing on remand was held on February 18, 1987. The transcript of the hearing is now before the court so that the record below is as complete as it can be.

A review of the February 18, 1987 transcript establishes to the court's satisfaction that both of the structures involved in the 1983 variance application were used for some type of residential purpose prior to the adoption of any zoning ordinance in the borough. While the record is still somewhat cloudy, a reasonable inference may be made that the property originally contained a principal dwelling and a garage. The garage was converted into a summer rental cottage at some time prior to the adoption of any ordinance which would have prohibited that use. The absence of zoning regulations and the increasing demand for summer housing encouraged this pattern

---

[1]Generally speaking, once an applicant has received a decision of the board and appealed in lieu of prerogative writs, the board is divested of jurisdiction absent a remand. *In re Plainfield–Union Water Co.,* 14 *N.J.* 296, 302–03 (1954); *Kramer v. Bd. of Adjust. Sea Girt,* 80 *N.J.Super.* 454, 462–63 (Law Div.1963), aff'd on other grounds, 45 *N.J.* 268 (1965); *Morton v. Mayor & Council of Tp. of Clark,* 102 *N.J.Super.* 84, 98–99 (Law.Div.1968), aff'd, 108 *N.J.Super.* 74 (App. Div.1969); *cf. Whispering Woods v. Middleton Tp.,* 220 *N.J.Super.* 161, 169–72 (Law Div.1987).

of residential development in the shore area. Homeowners saw the opportunity to provide additional housing for guests or to obtain rental income to defray the cost of their own housing, which was also most frequently not their principal dwelling. Thus, garages and other out buildings were converted for residential purposes and even the main dwellings were modified to provide duplexes or other additional living space. The facts in this case fit that pattern. Most zoning ordinances, including the Ship Bottom regulations, have now eliminated or severely restricted this type of land use.

The plaintiffs contend that at the time of the 1983 variance application which gave them the right to demolish the principal dwelling and build a new one in a different location, they could have obtained a subdivision of the lot under *Beers* so as to separate ownership of the two existing residences. Of course, that relief would not have given them the right to relocate the main dwelling. Instead, they opted to obtain the necessary variances to construct a new principal dwelling, but in the process, the Board of Adjustment took away the right of subdivision through the condition it imposed. The plaintiffs call upon the court to invalidate the condition precluding subdivision.

The court must first address the threshold question whether the condition imposed by the Board of Adjustment is valid. Obviously, if the condition is valid, the inquiry need not proceed. However, if it is invalid, the consequences of the invalidity must be determined. Two results are possible. First, the plaintiffs may be entitled to disregard the condition and retain the subdivision. Second, they may be held bound to the condition notwithstanding its invalidity, because they accepted the benefits of the variance and did not challenge the condition within the time required by law.

Paragraph nine of the 1983 Board of Adjustment resolution provides:

> The applicant has no intention to and has agreed not to seek subdivision of the subject premises into two nonconforming lots and the application is rendered with the understanding that the parcel will continue as one lot improved with the proposed main dwelling and the existing rental cottage.

New Jersey case law has not always been consistent in the treatment of such conditions. However, the court believes that the prevailing law is well summarized in 3 *Rathkopf, The Law of Zoning and Planning,* § 40.02 (4th ed. 1987):

> ... The general requirements relating to conditions which may be imposed are: The conditions imposed must be directly related to and incidental to the proposed use of the land, and must be without regard to the person who owns or occupies it.
>
> ... To be valid, conditions must (1) not offend against any provision of the zoning ordinance; (2) not require illegal conduct on the part of the permittee; (3) be in the public interest; (4) be reasonably calculated to achieve some legitimate objective of the zoning ordinance; and (5) not be unnecessarily burdensome to the landowner.

While no single New Jersey decision comprehensively enunciates these principles, a composite of the holdings of many of our cases dealing with the issue of the validity of such conditions conforms to the analysis contained in *Rathkopf. North Plainfield v. Perone,* 54 *N.J.Super.* 1 (App.Div.), certif. den., 29 *N.J.* 507 (1959); *V.F. Zahodiakin v. Board of Adjustment, Summit,* 8 *N.J.* 386 (1952); *Houdaille Con. Mats., Inc. v. Bd. of Ad. Tewksbury Tp.,* 92 *N.J.Super.* 293 (App.Div.1966); *State v. Farmland–Fair Lawn Dairies, Inc.,* 70 *N.J.Super.* 19 (App. Div.1961), certif. den. 38 *N.J.* 301 (1962); *Alperin v. Mayor and Tp. Com. of Middletown Tp.,* 91 *N.J.Super.* 190 (Ch. Div.1966).[2]

█ Given this analysis, is the condition valid? It is clear that the condition does not offend the zoning ordinance or require an illegal act on the applicant's part. Whether it is unnecessarily burdensome on the applicant depends primarily upon the determination of whether the condition is in the public

---

[2]Similar principles were enunciated in the recent case of *DeFelice v. Zoning Bd. of Adj.,* 216 *N.J.Super.* 377, 381 (App.Div.1987). However, it is not clear that the *DeFelice* court relied upon what this court believes to be the traditional analysis as contained in *Rathkopf* and the appellate decisions cited above.

interest and is reasonably calculated to achieve some legitimate zoning objective. It is to those issues I now turn.

Maintenance of the integrity of the zone plan is a fundamental principle of zoning and planning. *Belleville v. Parrillo's Inc.,* 83 *N.J.* 309, 314 (1980); *Heagen v. Borough of Allendale,* 42 *N.J.Super.* 472, 488 (App.Div.1956). Our law discourages the creation, modification or enlargement of uses which do not conform to the existing ordinance. *Grundlehner v. Dangler,* 29 *N.J.* 256 (1959); *Hay v. Bd. of Adjustment of Borough of Ft. Lee,* 37 *N.J.Super.* 461 (App.Div.1955). Approval of the subdivision would result in the creation of two undersized lots out of keeping with the present zone plan. That is hardly in the public interest. However, the plaintiff argues that because of the holding in *Beers,* it has been judicially determined that in the circumstances similar to those involved in this case, no legitimate zoning objective is achieved by a prohibition of subdivision and conversely that the public interest in the vitality of the zone plan must be secondary to the right of the applicant to subdivide.

The plaintiff in *Beers* owned a tract of land on which five bungalows were constructed prior to the adoption of the first zoning ordinance in the township. The homes were sold to tenant-occupants on installment contracts. Subsequently, when the plaintiff sought to convey the dwellings, he was required to apply for a subdivision. The application was denied. The Law Division affirmed the denial but that decision was reversed. The Appellate Division framed the issues as the statutory jurisdiction of the planning board over the matter or, alternatively, "the reasonableness or validity of a denial of approval of subdivision of this fully developed tract of land, in the light of the exempted nonconforming use of the property insofar as the zoning ordinance is concerned." 75 *N.J.Super.* at 307. The court held that the board's subdivision authority did not extend to prohibiting plaintiff's conveyances of the individual residences. It said:

> While we do not find it necessary to deal with the question whether the subdivision jurisdiction of a planning board can under any circumstances extend to an already fully improved parcel of land ... there is a plenitude of recent authoritative opinion that the basic motivating objective of the subdivision control provisions of the Municipal Planning Act (1953) is to prevent deleterious future development of vacant land. [*Id.* at 313].

The court concluded:

> ... The mere drawing of appropriate lot lines between the structures to replace the old map lines ... or to ratify for conveyance purposes the *de facto* lines of possession ... surely would not create substantial as distinguished from theoretical discrepancies with the zoning ordinance *not existing before* such new lines were drawn and before the zoning ordinance was adopted. The defendants' attitude towards plaintiff's program is seen actually to come down in essence to dictation of combined as against separate ownership of the dwellings. As indicated, we do not regard a mere change from tenant occupancy to owner occupancy as an extension or alteration of the previous nonconforming use of the dwellings. And there is no question as to the right of alienability of property along with its attendant valid nonconforming use. [*Id.* at 317].

*Beers* is factually and legally distinguishable from this case. *Beers* deals with the circumstances in which several principal residences were constructed on one lot before the adoption of land development ordinances in the community. While the dwellings were occupied by tenants, the owner could be presumed to have a reasonable expectation of the right to convey the individual dwellings at some time in the future. The drawing of lot lines does nothing more than to validate this right and confirm the already established independent use of the structures. Not so with the conveyance of a structure which was accessory to a residence. Normally, the accessory structure was converted from its use as a garage or other secondary use to provide more living space or to generate rental income. Under those circumstances there should not have been a reasonable expectation of the right to convey. The drawing of a lot line in this setting gives a new status to the accessory structure which its owner is not entitled to receive.

*Beers* prohibits land use control through subdivision when the structures were in place before zoning on the theory that the use was a protected nonconforming residence. Subdivision of property deals with the future use of vacant land. The

situation differs when a board of adjustment attempts to prevent an expansion of a nonconforming use by the imposition of a condition which would preclude a conveyance when the applicant seeks to modify the existing use and has no reasonable expectation of a right to alienate a part of the use. The imposition of a condition in those circumstances is a valid land use control. The applicant might be allowed some modification as they were here, but the Board could protect the public welfare by limiting the possibility that the intensity of the nonconforming use might be expanded in the future by a subdivision. In short, the Board can argue that it sought to assure that the dwelling would remain as an accessory to the principal use. It follows that the condition accomplishes the legitimate objectives of our state law and the local ordinance in restricting nonconforming uses.

The record before the court amply demonstrates that the cottage, ever since it was converted from a garage to a dwelling space, has been used in a subordinate or accessory relationship to the main dwelling. The cottage never attained the status of a principal residence either before or after the zoning ordinance precluded two main dwellings on one lot. Indeed, over the course of several applications by the present owners to the local boards designed at improving both the front and rear structures, the applicants never suggested that the rear dwelling had grown out of its accessory status. Rather, a fair inference can be made that when the plaintiffs accepted the 1983 variance which gave them approval to build a new main dwelling in a different location provided they did not thereafter seek a subdivision, both the plaintiffs and the Board were tacitly recognizing that the cottage was an accessory structure and should stay that way. What the plaintiffs now seek is to release the cottage from the accessory use limitations which it has always borne and instead give it the same standing as the main dwelling. Our courts have rejected similar efforts. *Collins v. Board of Adjustment of Margate City*, 3 *N.J.* 200 (1949); *Smilow v. Orange Planning Board*, 58 *N.J.Super.* 108

(App.Div.1959); *Peterson v. Bd. of Adjustment of Town of Montclair*, 7 *N.J.Super.* 282 (App.Div.1950). *Collins, Smilow,* and *Peterson* are factually distinguishable from the case now before the court because in each of those cases the accessory structure was illegally converted from its permitted use and thereafter conveyed or sought to be conveyed as an independent residence. However, in condemning the effort to transfer the residence, the three courts did not focus on the fact that the uses were illegal but rather that the owners were attempting to give an accessory use the status of a principal dwelling. Thus, the *Collins* court reasoned:

> ... What is sought here is the release of the accessory building from the use limitations affixed to it as such by the ordinance, and thereby to invest it with the like residence status as the principal dwelling, for the realization of the summer residential rental value, and thus to defeat the regulation governing land uses in Residence "A" districts. It goes without saying that this is an inadmissible procedure, for it would set at naught the provision of the ordinance for Residence "A" districts. It would put it within the power of the individual landowner to avoid the restriction by a subdivision of his lot. [*Id.* at 207].

The *Beers* court acknowledged that its ruling did not necessarily apply to every case in which land had been fully developed. 75 *N.J.Super.* at 313. This court concludes that *Beers* does not apply in this case. At the time of the adoption of the first zoning ordinance in Ship Bottom and ever since, the cottage has been an accessory dwelling. The condition imposed by the Board of Adjustment was a valid use control mechanism to insure that the cottage would remain an accessory use.

However, even if the condition is not sustainable under *Beers*, it should be binding on the plaintiffs nonetheless because of their failure to challenge it in time and because they accepted the benefits of the variance which contained that condition. As to the timeliness issue, the defendant argues that the plaintiffs' appeal is barred by *R.* 4:69–6 which requires the plaintiffs to challenge the condition within 45 days of the Board's decision. That rule is aimed at those who slumber on their rights and is designed to give a measure of repose to actions taken against public bodies. *Schack v. Trimble*, 28 *N.J.*

40, 49 (1958). Plaintiffs contend that the rule is inapplicable because the condition imposed by the Board of Adjustment is *ultra vires* and thus can be challenged in a collateral proceeding. Even if the condition imposed by the board is considered invalid, it is not utterly void. In *Summer Cottagers' Ass'n. of Cape May v. City of Cape May,* 19 *N.J.* 493 (1955), the Supreme Court differentiated between acts which are primarily or secondarily *ultra vires:*

> There is a distinction between an act utterly beyond the jurisdiction of a municipal corporation and the irregular exercise of a basic power under the legislative grant in matters not in themselves jurisdictional. The former are *ultra vires* in the primary sense and void; the latter, *ultra vires* only in a secondary sense which does not preclude ratification or the application of the doctrine of estoppel in the interest of equity and essential justice. [*Id.* at 504].

The Board unquestionably has the right to impose reasonable conditions. The condition was an exercise of the Board's quasi-judicial power. The fact that the condition subsequently could be found unreasonable does not render it retroactively void. Therefore, the plaintiffs were obligated to attack it promptly upon its imposition. *Washington Tp. Zoning Board v. Planning Board,* 217 *N.J.Super.* 215 (App.Div.), certif. den. 108 *N.J.* 218 (1987); *Marini v. Borough of Wanaque,* 37 *N.J.Super.* 32, 40 (App.Div.1955).

The plaintiffs' argument that the condition is not merely voidable but utterly void still would not achieve the result they seek. In the first place, the value of that distinction is highly questionable in the context of this case. As noted in *Marini, supra,* if distinctions are to be drawn between public acts which are utterly void and those which are merely irregular or illegal for the purpose of bypassing the time limitations of Rule 4:69–6, the salutary policy of quieting rights vested by that rule will be severely affected. 37 *N.J.* at 41. The distinction between void or voidable acts has more traditionally been applied to disputes involving the validity of a governmental act upon which someone has relied in good faith. The building permit cases are the classic example. *Jantausch v. Verona,* 41 *N.J.Super.* 89 (Law Div.1956), aff'd, 24 *N.J.* 326 (1957); *Tren-*

*kamp v. Township of Burlington,* 170 *N.J.Super.* 251 (Law Div.1979). The plaintiffs here have no claim of good faith reliance even if the condition is deemed utterly void.

█ In any event, to the extent that the distinction should be given any credence, the plaintiffs are also met by a well established body of law holding that if the condition imposed is ultimately declared unlawful, variances upon which it has been engrafted must also be set aside. *North Plainfield v. Perone, supra; V.F. Zahodiakin v. Board of Adjustment, Summit, supra; Houdaille Con. Mats. Inc. v. Bd. of Adjustment of Tewksbury Tp., supra; State v. Farmland–Fair Lawn Dairies, Inc., supra; Alperin v. Mayor and Tp. Com. of Middletown Tp., supra.* Underlying this principle is the assumption that a board would not have granted the variance without the condition. 3 *Rathkopf, The Law of Zoning and Planning,* § 40.05 (4th ed. 1987). The court in *North Plainfield* enunciates the rule as follows:

.... Neither defendant nor his predecessors in title ever had an absolute right under the local ordinance to conduct a service station on Newton Street as an isolated unit. The right was absolutely dependent upon the grant of an exception. So long as that exception continued in effect, the conditions which were imposed in connection therewith were inseparable from the right of enjoyment of the exception. If, then, the defendant's argument that the conditions were unreasonable in 1946 or in 1957 were to have prevailed, he would have won a Pyrrhic victory; for if the conditions are to be declared unlawful, the exception upon which they were engrafted must also be set aside. [54 *N.J.Super.* at 11].

█ Had this action been a direct challenge to the condition imposed by the Board of Adjustment, this court could have remanded the case to the Board of Adjustment to determine whether the variance would have been granted if it was found that the condition was invalid. However, the court is now reviewing the validity of that condition more than four years after its imposition and the appeal is from the decision of a Board which did not impose the condition. The court has thoroughly reviewed the record of the proceedings before the Planning Board in the present action. As noted, the 1983 record of the Board of Adjustment proceedings is missing.

Nonetheless, there is little doubt that the variance application would not have been approved in 1983 but for the assumption by that Board that the condition was valid. Indeed, the plaintiffs do not challenge that conclusion but merely assert that the invalidity does not affect the variance or the right to a subdivision. There is no necessity for a remand to determine that the 1983 variance would not have been granted if the Board knew then that the condition was invalid. Plaintiffs should not now be permitted to claim the benefit of the variance granted to them in 1983 while at the same time disavowing the condition. Since the variance cannot be undone, the condition should not be stricken, even if it is deemed invalid.

It could also be asserted that this result can be justified by principles of estoppel. *Charlie Brown of Chatham v. Board of Adjustment,* 202 *N.J.Super.* 312 (App.Div.1985). However, the doctrines of collateral estoppel and *res judicata* as applied to land use matters are not hard and fast rules and they may be set aside in cases of changed circumstances. *Russell v. Tenafly Bd. of Adjustment,* 31 *N.J.* 58, 66–67 (1959); *Allied Realty v. Upper Saddle River,* 221 *N.J.Super.* 407 (App.Div.1987). Rather, if the condition is deemed invalid, it should nonetheless bind the plaintiffs because they accepted the benefits of a variance with a condition which was an indispensable ingredient of the approval and which was treated by all parties at that time as being a valid limitation. The variance cannot be revoked since the plaintiffs failed to challenge the condition in a timely manner. The results of the failure to make that challenge should fall on the plaintiffs and not on the Board which cannot correct the alleged invalidity of the condition. Furthermore, the plaintiffs have enjoyed the benefits which flowed from the variance.

In summary, the court finds that in the circumstances of this case the condition imposed was valid. Alternatively, even assuming its invalidity, it should be binding on the plaintiffs for

the reasons expressed above.  The decision of the planning board is affirmed.