238 N.J. Super. 105 (1990)
569 A.2d 275
RONALD AND LINDA URBAN, (A-1062); RAYMOND M. TOMASSO, JR., RAYMOND TOMASSO, SR. AND DOROTHY TOMASSO (A-1113); IRA SCHULMAN (A-1123); ROBERT R. ZANES (A-1311); AND DAVID AND JUDY SHIRLEY (A-1315), PLAINTIFFS-RESPONDENTS,
v.
PLANNING BOARD OF THE BOROUGH OF MANASQUAN, MONMOUTH COUNTY, NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 21, 1989.
Decided January 23, 1990.
*107 Before Judges ANTELL, ASHBEY and STEIN.
Fay, Pandolfe, Shaw & Rubino, attorneys for appellant Manasquan Planning Board (John T. Pandolfe, Jr., on the brief).
Lautman, Henderson, Mills & Wight, attorneys for respondents Ronald and Linda Urban and David and Judy Shirley (Kevin B. Thomas, on the brief).
Bathgate, Wegener, Wouters & Neumann, attorneys for respondents Raymond M. Tomasso, Jr., Raymond M. Tomasso, Sr. and Dorothy Tomasso (Larry S. Feigenbaum, on the brief).
Stephen T. Keane, attorney for respondent Ira Schulman.
Pearce and Maguire, attorneys for respondent Robert R. Zanes (Scott T. McCleary, on the brief).
The opinion of the court was delivered by ASHBEY, J.A.D.
The Manasquan Planning Board appeals from five prerogative writ judgments setting aside the Board's denial of plaintiffs' subdivision applications to create two non-conforming lots from one lot, each containing dwelling units built before its first (1947) zoning ordinance.[1] The Board denied the applications *108 in order to keep the lots in single ownership and eventually to conform them to existing zoning requirements. The Law Division reversed, citing Beers v. Bd. of Adjust. of Wayne Tp., 75 N.J. Super. 305, 183 A.2d 130 (App.Div. 1962) and MacLean v. Planning Bd. of Brick Tp., 94 N.J. Super. 288, 228 A.2d 85 (App.Div. 1967). We hold that Beers and MacLean do not compel this result and accordingly reverse.[2]
An understanding of the background considered by the Board is essential. Manasquan is a community bordering on the Atlantic Ocean with a population of approximately 5,200 which increases greatly with seasonal residents during the summer months. In recent years, property values in Manasquan have risen rapidly. Manasquan's zoning ordinances, beginning in 1947, provided that each improved lot must front upon a street. Two or more principal dwellings on a single lot were prohibited. However, as of the time of these applications, the municipality had approximately 171 lots containing more than one residential structure, of which the vast majority were lots with two residential structures. In addition, a 20 to 25-acre parcel owned by the American Timber Company contained between 350 and 400 dwelling units, mostly small single-family bungalows built in the 1930s or perhaps earlier.[3] Many parts of the municipality, particularly those near the beach, were intensively developed, so much so that the municipality's fire code official testified that it is difficult to fight fires because the buildings are too close together, many without street access.
While there were varying reasons for the Board's denial of the subdivision applications, there was one central basis of the *109 Law Division reversals  the application of the doctrine enunciated in Beers v. Bd. of Adjust. of Wayne Tp. and MacLean v. Planning Bd. of Brick Tp. In Beers, plaintiff's lot contained five bungalows constructed prior to zoning requirements, each of which faced a street and was occupied by a purchaser under contract of sale in the post-war housing shortage. In good faith reliance on the contract of sale, each purchaser had improved the property. 75 N.J. Super. at 311, 183 A.2d 130. The subdivision of undersized lots was consistent with the other houses in the neighborhood. Id. at 309, 183 A.2d 130. In accord with his contract, plaintiff had given deeds to the equitable owners, one of whom insisted on subdivision approval. Plaintiff unsuccessfully sought subdivision approval and then a variance from the board of adjustment.
We held that plaintiff had the right to subdivide the property under the Municipal Planning Act of 1953, N.J.S.A. 40:55-1.1 et seq. We said that the "mere drawing of appropriate lot lines [around the dwellings] ... would not create substantial as distinguished from theoretical discrepancies with the zoning ordinance not existing before such new lines were drawn and before the zoning ordinance was adopted." Id. at 317, 183 A.2d 130. (emphasis in original).
In MacLean v. Planning Bd. of Brick Tp., we interpreted Beers to include the right of a property owner to subdivide a lot with four seasonally rented bungalows. The applicant had inherited a tract 88 feet wide and 670 feet long, running from a major road to the ocean. Although the four bungalows were physically situated between those two points, there was an access road which the municipality had paved. We referred to this access as a "roadway" for which the municipality had a right to seek dedication. In between Beers and MacLean, came Popular Refreshments Inc. v. Fuller's Milk Bar, 85 N.J. Super. 528, 542, 205 A.2d 445 (App.Div. 1964), certif. den. 44 N.J. 409, 209 A.2d 143 (1965). We held that a commercial landowner was not entitled to a subdivision as a matter of right in order to comply with its obligation to sell part of the tract to its *110 commercial tenant, although the tenant had a commercial structure in place before the passage of a restrictive ordinance. We held that this circumstance did not constitute a permanent development of the land which precluded the economic use of the property as a whole. We narrowed Beers to its facts, the devotion of an entire tract to development of separate homesites, each improved by a dwelling.
More recently, in Orloski v. Planning Bd., 234 N.J. Super. 1, 559 A.2d 1380 (App.Div. 1989), we affirmed that part of Judge Serpentelli's holding (reported at 226 N.J. Super. 666, 668 to 676, 545 A.2d 261 (Law Div. 1988)), that Beers did not apply to mandate a subdivision where plaintiffs, like these plaintiffs, had lots with two dwellings. There the judge found that one structure was designated as "main building" and the other as a "cottage," originally a garage but converted prior to restrictive zoning.[4] Judge Serpentelli rejected plaintiffs' reliance on Beers to establish their unqualified right to subdivide because, of the two units, one never attained the status of a principal residence nor the status of equally used structures, unlike the bungalows in Beers or MacLean.
In the Board's resolutions denying the subdivision applications, it expressly found Beers inapplicable because Manasquan (1) had many more multiple-structure lots than the municipality there involved; (2) several resulting lots would have no street frontage; (3) allowing subdivision would have a devastating impact upon the Manasquan Zone Plan. Its general conclusions relied on the Board's consultant who said that creating small lots would defeat zoning efforts because an owner of a destroyed structure would have a clear case of hardship to justify rebuilding, whereas if the lots were left in one ownership, the *111 loss of one of two units would not necessarily have the same result.[5]
Individually the resolutions cited specifically: (1) inadequate parking in the lots of Urban, Tomasso, Schulman and Zanes; (2) elevating accessory or "auxiliary" structures to separate and independent status in the cases of Shirley, Schulman and Zanes; (3) lack of street frontage in the cases of Shirley and Zanes and lack of frontage and access in the case of Schulman. Finally, the Tomasso resolution cited the intent of the master plan and zoning ordinance to upgrade lot sizes in the zone in which the Tomasso structures were located, a plan which the municipality's planning consultant testified had been successful prior to subdivision applications such as these.
Of the several plaintiffs, only plaintiff Tomasso presented a professional planner in support of his application. He testified that multiple-structure lots were fairly common in resort towns and subdivisions were harmless because they did not alter the use of the property, only the ownership. In his opinion, the municipality could declare a blight to reduce the overcrowding. He admitted, however, such a remedy was probably unrealistic in view of the high property values.
It is axiomatic that where a statute gives a local board the discretion to grant certain relief, a court may intervene only upon a showing that the board's decision was arbitrary, unreasonable or capricious. Kramer v. Bd. of Adjust., Sea Girt, 45 N.J. 268, 296, 212 A.2d 153 (1965). A board's resolution of factual issues must stand if supported by sufficient credible evidence in the record. Rowatti v. Gonchar, 101 N.J. 46, 51, 500 A.2d 381 (1985). A board's determination of a legal issue, however, is entitled to no particular deference since the courts are equipped to resolve issues of law. Cherney v. Zoning Bd. of Adj., 221 N.J. Super. 141, 145, n. 1, 534 A.2d 41 (App.Div. *112 1987); Grancagnola v. Planning Bd., 221 N.J. Super. 71, 75 n. 5, 533 A.2d 982 (App.Div. 1987); Jantausch v. Borough of Verona, 41 N.J. Super. 89, 96, 124 A.2d 14 (Law Div. 1956), aff'd 24 N.J. 326, 131 A.2d 881 (1957).
We begin with the Board's argument that all of these applications, like those in Orloski (except that of Tomasso), concerned two structures one of which could reasonably be viewed as accessory to the other.[6] An accessory use is one which is customarily incidental and subordinate to the principal use of the property. See e.g., Charlie Brown of Chatham v. Board of Adjustment of Chatham, 202 N.J. Super. 312, 322-323, 495 A.2d 119 (App.Div. 1985); State v. P.T. & L. Construction Co., Inc., 77 N.J. 20, 26-27, 389 A.2d 448 (1978); Chatham v. Donaldson, 69 N.J. Super. 277, 282, 174 A.2d 213 (App.Div. 1961). The Law Division rejected the application of Orloski, then a Law Division opinion, concluding that under Beers and MacLean, if some form of residential structure existed prior to the advent of zoning restrictions, whether that structure was originally accessory was irrelevant, provided two separate dwelling units were created before zoning was effected. Orloski however expressly rejected this interpretation of Beers. 226 N.J. Super. at 670, 545 A.2d 261.
We recognize that Judge Serpentelli relied on the fact that the Orloski "cottage" had never lost its accessory quality, a factor which differs from some of the within applications. The other circumstances supporting his decision as affirmed, however, seem to us identical. As Judge Serpentelli said of the Orloski dwellings,
The garage was converted into a summer rental cottage at some time prior to the adoption of any ordinance which would have prohibited that use. The absence of zoning regulations and the increasing demand for summer housing encouraged this pattern of residential development in the shore area. Homeowners saw the opportunity to provide additional housing for guests or to obtain rental income to defray the cost of their own housing, which was also *113 most frequently not their principal dwelling. Thus, garages and other out buildings were converted for residential purposes and even the main dwellings were modified to provide duplexes or other additional living space. The facts in this case fit that pattern. Most zoning ordinances, including the Ship Bottom regulations, have now eliminated or severely restricted this type of land use. [Orloski v. Borough of Ship Bottom, 226 N.J. Super. at 670-671, 545 A.2d 261]
If one equates "front" and "back" or "larger" and "smaller" with evidence of subordination, we do not agree with the Law Division in this case that the record did not support an Orloski analysis. Clearly, the Orloski structures as described by Judge Serpentelli resembled those in the present applications, (including that of Tomasso) far more than those in Beers and MacLean.
Reviewing the applications individually, we found the following:

TOMASSO
Tomasso's lot was non-conforming even if it had contained only one house and had been since 1947. Tomasso's property consisted of one two-family house facing Third Avenue built in 1932 and one one-family house facing Brielle Road built in 1928. The tax map showed identically-situated neighboring lots with units facing Brielle Road, and back yards to a lot line continuing from Tomasso's. Tomasso's comparable back yard area was covered by the two-family house which faced Third Avenue. Ironically, from a photograph the two-family house facing Third Avenue was named the "Annex."[7]

URBAN
On the Urban property, one two-story, two-family residence had been built in 1934, whereas the other two-family house had been built in 1942. Urban described the 1942 structure as the "smaller" unit. Although the Urban structures were described *114 as fronting on one street, side by side, this description was misleading, as each structure also had another street as its border. Testimony of a neighbor indicated that the owner originally lived in the two-story unit and rented the "rear" unit, which implied that both units originally faced away from a common street. The neighbor suggested that the 1942 "back" unit was probably a garage at one time. While the lot had barely enough footage for a one-family house, there were two two-family houses on it. Neighbors testified that each of the four units was occupied by groups during the summer, despite the fact that the surrounding properties conformed to one-family zoning.

SHIRLEY
The Shirley application referred to two structures on the lot, one in front of the other. The "front" house was constructed in 1917 and the "back" structure in 1927. The applicant testified the back structure was referred to as "improvements" on the tax bill, although at oral argument before the Law Division, counsel represented that the structures had been separately assessed since 1927.[8] Shirley contended that its "rear" structure, being only one story, could never have been both a garage and an apartment. Whether its garage use was converted to dwelling space when it became separately assessed is not in the record.[9]

ZANE
The Zane application involved one front and one rear dwelling on a lot which conformed to lot size requirements for one *115 residence. Both were built in 1922. The rear dwelling was accessed by an eight or nine-foot driveway which the applicant proposed to extend to fifteen feet. Zane also agreed to remove a garage on the lot in order to permit parking. The municipal planner said that whether one building was an accessory to the other was not clear, "but often that is the case how these dual buildings situations existed."

SCHULMAN
The Schulman application referred to a front (beach) house and one in back (facing the street). Both were on a lot which did not conform to the lot size requirements for one residence. The street residence was built over a two-car garage. There was no vehicular access to the "beach" house. Dr. Schulman dated the beach house from its wiring as 80 years old. The municipal planner testified that garage apartments built on the street were historically intended to be auxiliary to the beach house which was the primary use of the property.
We have detailed these factors supporting a "principal" "accessory" structure analysis, but this analysis is subordinate to our primary conclusion that the application of Beers and MacLean to these subdivisions was error. We do not fault the Law Division which properly applied "stare decisis, [the] principle of adherence, for the sake of certainty and stability, to precedents once established," Smith v. Brennan, 31 N.J. 353, 361, 157 A.2d 497 (1960), but are satisfied that Beers and MacLean have been misinterpreted in the light of the present statutory authority.
Before the Board, the municipal planner suggested that both Beers and MacLean were, in effect, "pre-Mount Laurel" cases in which the municipalities had been deliberately obstructing a valid need for low to moderate income family housing. He suggested that in both cases, by establishing unrealistic zoning requirements, the municipalities had engaged in inverse condemnation. He contrasted Manasquan zoning and the high-valued *116 Manasquan real property which was being used for recreation rental in crowded, substandard developments. One of the planning board members distinguished Beers on the ground that its intent was to protect "homeownership and that's entirely different than rental ownership." He also distinguished the five houses in Beers and the four houses in MacLean from the "house in the back."
We also note that, while MacLean has been cited for the proposition that bungalows pre-existing zoning which do not front on a street are entitled to subdivision recognition, subject only to provision of access which must be reasonable, the facts of that case support a much narrower holding. The MacLean court not only said that the 20-foot driveway which ran from a public street toward the beach and was the access to the three "back" bungalows had been paved by the municipality, it spoke as if the bungalows fronted on that driveway, rather than paralleling the one house which faced the public street. In effect, the "driveway" was a private road. It remained only for the applicant and the property owners to the south to dedicate this road, making it public, a condition which the court suggested could properly be attached to subdivision approval by the board. Such a situation is to be contrasted to undersized lots where one "front" dwelling precedes one "back" dwelling on a 25 to 50-foot lot, and where the "back" dwelling could never front on a public road.
In addition to the factual distinctions between Beers, MacLean and these five subdivisions, and more important, the applicable statutory authority here is the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 et seq. Under that law, the governing body of any municipality may adopt an ordinance requiring the planning board to approve a subdivision. A subdivision is defined as "the division of a lot, tract or parcel of land into two or more lots, tracts, parcels or other divisions of land for sale or development." N.J.S.A. 40:55D-7. Only the *117 following land divisions are exempt from subdivision requirements:
(1) divisions of land found by the planning board or subdivision committee thereof appointed by the chairman to be for agricultural purposes where all resulting parcels are 5 acres or larger in size,
(2) divisions of property by testamentary or intestate provisions,
(3) divisions of property upon court order including but not limited to judgments of foreclosure,
(4) consolidation of existing lots by deed or other recorded instrument and
(5) the conveyance of one or more adjoining lots, tracts or parcels of land, owned by the same person or persons and all of which are found and certified by the administrative officer to conform to the requirements of the municipal development regulations and are shown and designated as separate lots, tracts or parcels on the tax map or atlas of the municipality. The term "subdivision" shall also include the term "resubdivision." [Ibid.]
Under the MLUL all subdivisions are required to conform to the applicable provisions of the ordinance, N.J.S.A. 40:55D-38d, which may contain provisions regulating lot sizes and dimensions. N.J.S.A. 40:55D-65b. The planning board, in conjunction with subdivision review, may grant a variance to permit the creation of an undersized lot, but only upon a showing of exceptional and undue hardship or upon proof that the purposes of the MLUL would be advanced and the benefits of the variance would substantially outweigh any detriment. N.J.S.A. 40:55D-70c(1) & (2); N.J.S.A. 40:55D-60a. It is undisputed that, absent some exception, the five subdivision applications required a variance. A question of statutory interpretation is thus posed concerning whether Beers and MacLean are an implied exception surviving the MLUL.
We recognize that much of the MLUL was borrowed from the Municipal Planning Act of 1953, N.J.S.A. 40:55-1.1 et seq., repealed by L. 1975, c. 291 § 80, eff. August 1, 1976. The definition of "subdivision" found in N.J.S.A. 40:55D-7, for instance, was taken from the definition of that term in N.J.S.A. 40:55-1.2. The requirement of N.J.S.A. 40:55D-38d that subdivision ordinances require compliance with lot sizes established by the zoning ordinance had as its source N.J.S.A. 40:55-1.15, repealed by L. 1975, c. 291 § 80, eff. August 1, 1976. It is *118 arguable that the MLUL Legislature endorsed the Beers/MacLean exception to variance requirement by not expressly rejecting it. Guzman v. City of Perth Amboy, 214 N.J. Super. 167, 174, 518 A.2d 758 (App.Div. 1986); see Brewer v. Porch, 53 N.J. 167, 174, 249 A.2d 388 (1969).
The fundamental question is overall legislative intent. The MLUL has been construed as emphasizing that planning "is the cornerstone of sound governmental policy ..." Kaufmann v. Planning Bd. for Warren Tp., 110 N.J. 551, 557, 542 A.2d 457 (1988). The Beers court allowed subdivision as a matter of right in part because the court perceived that to hold otherwise would conflict with the State's policy of protecting nonconforming uses, 75 N.J. Super. at 316-317, 183 A.2d 130. N.J.S.A. 40:55D-68, however, states:
Any nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the structure so occupied and any such structure may be restored or repaired in the event of partial destruction thereof.
Although protected by the MLUL, nonconforming uses were thus expressly disfavored by the Legislature as being inconsistent with sound zoning principles, potentially impairing the zone plan and damaging surrounding properties. Belleville v. Parrillo's Inc., 83 N.J. 309, 315-316, 416 A.2d 388 (1980). The MLUL has a goal that the nonconforming use will ultimately conform. Id. at 315, 416 A.2d 388. The same policy applies to nonconforming structures. Foster-Hyatt Group, etc. v. W. Caldwell Plan. Bd., 174 N.J. Super. 10, 12, 415 A.2d 349 (App. Div. 1980).
We have consistently effectuated this MLUL policy by prohibiting any enlargement of nonconforming uses, see Belleville v. Parrillo's Inc., 83 N.J. at 315-316, 416 A.2d 388, whether the expansion increases the nonconforming structure or increases the non-conforming use. See Cos-Lin, Inc. v. Bd. of Adjustment, 221 N.J. Super. 148, 160, 534 A.2d 44 (App.Div. 1987), certif. den. 110 N.J. 201, 540 A.2d 193 (1988) (conversion of a seasonal restaurant to a year-round operation amounts to a *119 forbidden expansion); Hantman v. Randolph Twp., 58 N.J. Super. 127, 155 A.2d 554 (App.Div. 1959), certif. den. 31 N.J. 550, 158 A.2d 451 (1960) (conversion of summer bungalow colony to year-round dwellings constitutes illegal expansion).
Moreover, the underlying principle of Beers cannot be reconciled with later cases, and the precedential value of a case is considerably weakened when subsequent case law undermines its essential reasoning. Kass v. Brown Boveri Corp., 199 N.J. Super. 42, 53, 488 A.2d 242 (App.Div. 1985); State v. Ciuffini, 164 N.J. Super. 145, 152, 395 A.2d 904 (App.Div. 1978). The Beers court reasoned that the non-conforming use was not changed by the drawing of lot lines, 75 N.J. Super. at 317, 183 A.2d 130, assuming that a structure on a newly-created, undersized, lot could not necessarily be replaced. Id. at 316, 183 A.2d 130. We said that if the buildings were destroyed or removed, "the statutory rights attendant upon the nonconforming use will automatically cease, and any reasonable zoning regulation may then properly be brought to bear upon the property." Ibid.
While that reasoning may have been valid in 1962, subsequent case law makes it increasingly questionable. See Harrington Glen, Inc. v. Mun. Bd. Adj. Bor. Leonia, et al., 52 N.J. 22, 31-33, 243 A.2d 233 (1968) (zoning boards must review variance applications by owners of undersized, isolated lots based on acknowledged hardship); Gougeon v. Borough of Stone Harbor, 52 N.J. 212, 225-226, 245 A.2d 7 (1968) (denial of hardship variance may amount to unconstitutional restriction on the use of property); Chirichello v. Zoning Board of Adj. Monmouth Beach, 78 N.J. 544, 557, 397 A.2d 646 (1979) (denial of hardship variance could constitute unconstitutional deprivation of property); Commons v. Westwood Zoning Board of Adjustment, 81 N.J. 597, 607, 410 A.2d 1138 (1980) (when variance for a structure on an undersized lot is denied, property may be deemed zoned into inutility, calling for payment of compensation); Nash v. Board of Adjustment of Morris Tp., 96 N.J. 97, 107, 474 A.2d 241 (1984) (to avoid hardship, the fair *120 market value of a property must be computed on the assumption that all necessary variances have been granted); Cf. Davis Enterprises v. Karpf, 105 N.J. 476, 484, 523 A.2d 137 (1987) (neighbor's offer to purchase non-conforming lot does not vitiate hardship necessitating distinguishing previously developed from vacant land). Based on these cases, in our view, the Board did not err when it predicted that any destroyed structure on these new undersized lots would be replaceable for hardship reasons, a factor not considered in Beers or MacLean.
For all of these reasons, we are satisfied that the Board properly distinguished Beers and MacLean from the applications before it and properly ruled that plaintiffs were not entitled to a subdivision without a variance. The Law Division erred in its reversal.
In its second claim on appeal the Board contends that the trial court erred in denying certain fees the Board sought in its counterclaim against plaintiffs. The issue concerns only Tomasso.[10] Apparently, Tomasso was billed for the following:

Public hearings in excess of two $ 100.00
Professional Engineer $ 119.06
Professional Planner $1,075.00
Borough Police Department Photographs $ 50.00
Cost of Transcript $ 173.00
 _________
TOTAL $1,517.06

The Law Division judge allowed only the $100 fee for the Board's secretary for the extra hearing, and the borough engineer's fee of $119.06. Our careful review persuades us that his ruling was well supported and we affirm it for the reasons he expressed. See N.J.S.A. 40:55D-8; N.J.S.A. 40:55D-10f. See also Flama Const. Corp. v. Tp. of Franklin, 201 N.J. Super. 498, 493 A.2d 587 (App.Div. 1985).
*121 The judgments setting aside the subdivision application denials by the Board are reversed. The Law Division disposition of the Board's fee applications is affirmed.
NOTES
[1] These appeals were consolidated by order of this court on December 13, 1988. On Nov. 29, 1988, the Board passed several of the subdivision applications subject to this appeal.
[2] We emphasize that we do not address whether any of the applicants was entitled to a variance. At issue is whether each was entitled as a matter of law to draw non-conforming lot lines around a non-conforming structure where the record indicates that some structure preceded zoning requirements.
[3] According to the Board record, American Timber Company was taxed on the land and rented the land to individual building owners who were separately taxed as a "line item."
[4] As part of their application to demolish the "main building" and replace it, plaintiffs had agreed not to subdivide. Plaintiffs' subsequent repudiation of this condition resulted in a denial of their subdivision application and the prerogative writ action before Judge Serpentelli.
[5] The municipal planner said that in the beach area there were some 500 to 600 lots to which the principles affecting these subdivisions could be applied.
[6] The municipal planner referred to the master plan's objective of eliminating these "rear yard homes".
[7] While no one contends that the two-family use was not a prior-existing non-conformity, there is nothing in Beers or MacLean to suggest that non-conforming uses on non-conforming lots were entitled to be recognized by subdivision, as both cases dealt only with conforming uses in non-conforming lots.
[8] It appeared undisputed that separate listings in the one tax bill had been accepted in the past by the municipality as indicative of two principal uses. The Law Division must have accepted this characterization to include a listing of "improvements." None of the tax bills is in the record.
[9] In any event, the Orloski garage was converted to a "cottage" prior to the imposition of zoning restrictions. 226 N.J. Super. at 670, 545 A.2d 261.
[10] The municipality's belated assertion of costs against the other applicants was rejected, a ruling which is not appealed from.