592 A.2d 240

RONALD AND LINDA URBAN, IRA SCHULMAN, ROBERT R. ZANES, AND DAVID AND JUDY DELANEY SHIRLEY, PLAINTIFFS, AND RAYMOND M. TOMASSO, JR., RAYMOND TOMASSO, SR. AND DOROTHY TOMASSO, PLAINTIFFS-APPELLANTS, v. PLANNING BOARD OF THE BOROUGH OF MANASQUAN, MONMOUTH COUNTY, NEW JERSEY, DEFENDANT-RESPONDENT.

Argued January 28, 1991—Decided July 18, 1991.

*Thomas E. O'Brien* argued the cause for appellants (*Bathgate, Wegener, Wouters & Neumann,* attorneys).

*Michael R. Rubino, Jr.,* argued the cause for respondent (*Fay, Pandolfe, Shaw & Rubino,* attorneys).

*Fred G. Stickel, III,* General Counsel, submitted a letter brief on behalf of amicus curiae New Jersey State League of Municipalities.

*Alan J. Pogarsky,* President, submitted a letter brief on behalf of amicus curiae New Jersey State Bar Association.

The opinion of the Court was delivered by

O'HERN, J.

The question in this appeal is whether an existing nonconforming parcel of land occupied by several dwelling structures is divisible as a matter of right into multiple nonconforming lots accommodating each of the structures. We hold that such a division is a subdivision of land within the meaning of the Municipal Land Use Law of 1975 (MLUL), *N.J.S.A.* 40:55D–1 to –112, and that such a subdivision may be granted only on approval of the necessary variances by the municipal planning board.

I

The case has a troubling history because it involves an unsettling issue of lack of respect for the law. In a prior unreported opinion that reviewed a separate denial of subdivision application, the Appellate Division of the Superior Court had affirmed a Law Division judgment that directed the Planning Board of the Borough of Manasquan to follow the holding of *Beers v. Board of Adjustment,* 75 *N.J.Super.* 305, 183 *A.*2d 130 (App.Div.1962). *Beers* held that an owner of a nonconforming lot that contained multiple structures had a right to subdivide the lot along the lines of the structures. In effect, *Beers*

required planning boards to grant subdivision approvals in circumstances such as those here.

Understandably, then, plaintiffs did not argue before the Planning Board for variances under *N.J.S.A.* 40:55D–70c(2), the so-called "flexible variance." Plaintiffs' case was addressed instead to the meaning and effect of the *Beers* decision as the Appellate Division had previously ruled the Planning Board was bound by that case. Accordingly, the questions that plaintiffs' counsel put to his expert witness dealt more with the witness's understanding of the application of *Beers* in other communities than with the reasons in favor of variances in the circumstances of this case. The decision by the Planning Board thus turned on the applicability of *Beers* rather than a determination under the standards imposed by the MLUL. The Planning Board, however, believed that the Appellate Division had erred as a matter of law in its previous decision directing that *Beers* be applied and denied plaintiffs' application notwithstanding the earlier mandate.

Plaintiffs' lot is a rectangular corner lot in Manasquan. With frontages of twenty-five feet on Brielle Road and 100 feet on Third Avenue, its 2500 square feet are below the ordinance requirement of 3400 square feet. There are two dwelling houses on the lot (a one-family and a two-family). Neither meets the present setback requirements. Plaintiffs propose to create separate lots for each of the structures, one to be approximately twenty-five by sixty feet, or about 1500 square feet, and the other approximately twenty-five by forty feet, or about 1000 square feet. At the time of plaintiffs' application, there were over 170 lots in Manasquan with multiple structures on them. In addition, one undivided twenty-acre tract of land contained approximately 350 dwellings, mostly small bungalows. The Planning Board members, although expressing various reasons for departing from the *Beers* ruling, seemed most concerned that Manasquan's history as a summer-bungalow colony left it especially vulnerable to any detrimental effect of *Beers.*

The Law Division judge, whose ruling in the previous case involving the Manasquan Planning Board had been affirmed, was understandably indignant about the Planning Board's actions in this case, and directed it to approve plaintiffs' subdivision request and those of several other similarly situated property owners. On appeal, a different panel of the Appellate Division reversed the Law Division judgment, disapproving of the reasoning of the *Beers* case and holding that, regardless of *Beers'* validity under prior law, the MLUL imposed superseding requirements. *Urban v. Planning Bd.*, 238 *N.J.Super.* 105, 569 *A.*2d 275 (1990). Accordingly, it reinstated the Planning Board's denial of the subdivisions. Only the Tomassos sought certification of that decision, which we granted. 121 *N.J.* 664, 583 *A.*2d 349 (1990).

We affirm the Appellate Division decision that *Beers* should not serve to grant an unrestricted right to subdivide existing nonconforming lots occupied by multiple structures. We believe the proper approach is to balance the rights of owners of existing nonconforming properties with the public interest to achieve better zoning for the community. Because the hearings below focused on plaintiffs' right to subdivide under the authority of *Beers,* that balance, mandated by the MLUL, has not been adequately addressed. We therefore remand the matter to the Planning Board for further proceedings in accordance with this opinion.

## II

Several principles of land-use law intersect here but none points unerringly to an answer. Of course, that the expansion of a nonconforming use or structure is not favored is a settled principle of law. *Avalon Home & Land Owners Ass'n v. Borough of Avalon,* 111 *N.J.* 205, 543 *A.*2d 950 (1988). At the same time, the nonconforming rights run with the land irrespective of changes in ownership. *N.J.S.A.* 40:55D-68. That principle is consistent too with our view that the status of

land use does not turn on the status of ownership. *Kirsch Holding Co. v. Borough of Manasquan,* 59 *N.J.* 241, 281 *A.*2d 513 (1971) (summer rentals do not violate single-family zoning restriction). Those last two principles suggest that there is no difference from a planning or subdivision viewpoint based on whether one or more parties own the nonconforming structures.

That viewpoint draws us at first because of the conceptual dilemma posed: how can recognition of the existence of what is already on the land constitute bad planning? The parties' repeated arguments before the Planning Board focused on just that question. When you subdivide the lot, what do you have? Is it just what you had before or is it something different? Plaintiffs' attorney insisted that "the only difference between the project before the subdivision and after the subdivision is ownership." The Planning Board's attorney, on the other hand, insisted that by "the drawing of that [subdivision] line * * * you are creating something that wasn't there before"; and that the owners "have one [nonconforming] lot right now," but want to create "two lots that don't conform."

Courts have viewed the issue through both prisms. In *Keith v. Saco River Corridor Commission,* 464 *A.*2d 150 (1983), the Maine Supreme Court held that the owner of a parcel of land on the Saco River containing a duplex residence and two detached single-family houses could divide the land into four separate lots free of the requirements of the state's Saco River Corridor Act. Citing *Beers,* it ruled: "The mere change from tenant occupancy to owner occupancy in the instant case is not an extension, expansion or enlargement of the previously existing nonconforming buildings, structures or use within the meaning of the restrictive provision of [the Saco River Corridor Act]." *Id.* at 155.

New Hampshire, however, has held that when the proposed subdivision of lots explicitly conflicts with a local subdivision requirement, "[t]he creation of two lots would thereby substan-

tially change the nature and the extent of the previous noncon-
forming use." *Isabelle v. Town of Newbury*, 114 *N.H.* 399, 403,
321 *A.*2d 570, 572 (1974). As the matter may be viewed in
either light, we must ask what reasons best inform the judg-
ment.

In *Beers*, the court emphasized that the Municipal Planning
Act of 1953, *N.J.S.A.* 40:55–1.1 to –1.29, repealed by *L.* 1975, *c.*
291 (Planning Act), was enacted primarily to regulate the
development of vacant land in fast-growing, post-World War II
New Jersey. Hence, it concluded that the requirements for
subdivision were not conceptually or in principle intended to
apply in the circumstance of a preexisting nonconforming lot
occupied by structures. *Beers, supra,* 75 *N.J.Super.* at 317,
183 *A.*2d 130. The truth is that the requirement for approval
before subdivision is but a part of the more comprehensive
power of local government to address its social needs through
the regulation of physical development. That power could
never be explained better than by Justice Heher, when he sat
on the New Jersey Supreme Court. He said:

> The state possesses the inherent authority—it antedates the constitution—to
> resort, in the building and expansion of its community life, to such measures as
> may be necessary to secure the essential common material and moral needs.
> The public welfare is of prime importance; and the correlative restrictions upon
> individual rights—either of person or of property—are incidents of the social
> order, considered a negligible loss compared with the resultant advantages to
> the community as a whole. Planning confined to the common need is inherent
> in the authority to create the municipality itself. It is as old as government
> itself; it is of the very essence of civilized society. A comprehensive scheme of
> physical development is a requisite to community efficiency and progress.
> [*Mansfield & Swett, Inc. v. Town of W. Orange,* 120 *N.J.L.* 145, 150 [198 *A.*
> 225] (Sup.Ct.1938).]

We have never held that that local power to regulate the use
of land must be exercised under any specific format. Thus, in
*Kligman v. Lautman,* 53 *N.J.* 517, 251 *A.*2d 745 (1969), a
municipality that had never implemented the Planning Act was
nevertheless empowered to determine the placement of new
interior streets. And in *Angermeier v. Borough of Sea Girt,*
27 *N.J.* 298, 142 *A.*2d 624 (1958), a case quite similar to the

present one, involving a small municipality bordering on the Atlantic Ocean, "nearly 100% developed," *id.* at 310, 142 *A.*2d 624, a party seeking to avoid municipal regulation of a division of land argued that "subdivision is normally a part of planning, not zoning," *id.* at 305, 142 *A.*2d 624, and that Sea Girt's failure to have enacted a master plan under the Planning Act prevented it from exercising regulatory power over the subdivision of land. The Court disagreed. The precise holding of that case as explained in *Kligman v. Lautman, supra,* was that "the ordinance was invalid because it lacked appropriate standards. * * * [A] municipality which has not implemented the Planning Act may nevertheless exercise such incidental control over land subdivision as may be validly derived from powers other than those granted by the Planning Act, including proper zoning ordinance provisions." 53 *N.J.* at 537, 251 *A.*2d 745.

Ultimately, then, the question is whether the municipal requirement that subdivisions of previously developed land meet or be given variances from current lot size requirements is a reasonable exercise of governmental power. We believe that the reasonableness of the zoning requirement should be measured not so much by what its effect will be today but rather by what the effect will be tomorrow. We have always recognized the large measure of discretion that is reposed in municipalities under our constitutional structure to adopt measures reasonably designed to advance the purposes of zoning. *Kramer v. Board of Adjustment,* 45 *N.J* 268, 296, 212 *A.*2d 153 (1965).

The court below emphasized that one critical underpinning of the *Beers* decision, namely, that a municipality could still anticipate after subdivision that lots would be brought into conformity in the event of loss or removal of the individual structures, has been undercut by later developments in the law. 238 *N.J.Super.* at 119, 569 *A.*2d 275; *see Gougeon v. Board of Adjustment,* 52 *N.J.* 212, 245 *A.*2d 7 (1968) (owner of an undersized lot has constitutional right to some reasonable use

of the land and ordinarily is to be treated as owner of a buildable lot). If the municipality is powerless to regulate the development of the community with an eye toward eventually bringing existing substandard conditions into conformity, it will be condemned to endure interminably the errors of the past.

That the zoning ordinance, which requires a minimum lot size of 3400 square feet, may not soon bring about a change in the existing undersized conditions is not fatal to its validity. Routine economic forces may possibly bring about the desired changes in the development pattern of the community, allowing for better sidelines, increased setback areas, and more living space for individual families. The record before the Planning Board contains evidence that such changes, however slight, had been taking place in Manasquan with the reassembly of lots and the construction of conforming facilities. In short, the cataclysmic solution suggested by plaintiffs' expert of declaring the area "blighted" under *N.J.S.A.* 40:55-21.10, which would entail condemnation of the land and just compensation to the owners, is not the only way that the municipal goal could ever be achieved. If there is any rational way that a municipal zoning ordinance can achieve its purpose, we will invariably sustain it. *Zilinsky v. Zoning Bd. of Adjustment,* 105 *N.J.* 363, 521 *A.*2d 841 (1987).

### III

Hence, we believe that the proper resolution of the matter is to recognize the plain fact of the situation: the subdivision of a nonconforming lot into two or more nonconforming lots is an act of private dominion over property and is subject to the reasonable exercise of local development powers. The MLUL reposes in the Planning Board the proper measure of discretion to balance the public interest in upgraded zoning with the rights of the owner of the preexisting nonconforming property in its consideration of dimensional variances. A protected nonconforming use exists "as a matter of right" under

the MLUL. *Burbridge v. Township of Mine Hill*, 117 *N.J.* 376, 388, 568 *A.*2d 527 (1990) (citing *N.J.S.A.* 40:55D–68). The holder of such a right has an "advantage" in seeking a variance because the applicant need not show that the variance properly could have been granted to create the nonconforming use initially. *Kohl v. Mayor of Fair Lawn*, 50 *N.J.* 268, 281, 234 *A.*2d 385 (1967). No showing of confiscatory hardship is necessary to obtain such dimensional variances. *Davis Enters. v. Karpf*, 105 *N.J.* 476, 494, 523 *A.*2d 137 (1987) (Stein, J., concurring). In addition, the Legislature, in recognition of the high degree of professionalism at the municipal planning level, has reposed in planning boards a large measure of discretion to grant relief from dimensional requirements. *See Commercial Realty & Resources Corp. v. First Atlantic Properties Co.*, 122 *N.J.* 546, 585 *A.*2d 928 (1991). That power will serve well to accommodate the competing interests. The municipal zoning power is not to be exercised solely to increase the economic benefit to the owner but rather to create a better zoning alternative for the community. *Kaufmann v. Planning Bd.*, 110 *N.J.* 551, 542 *A.*2d 457 (1988). As a condition of expansion or, as here, of subdivision, "[t]hrough heightened control, a municipality can minimize inconsistencies with permitted uses." *Burbridge, supra*, 117 *N.J.* at 388, 568 *A.*2d 527. Thus, aesthetics, access, landscaping, or safety improvements might all be appropriate conditions for approval of a subdivision with variances. *See Orloski v. Planning Bd.*, 226 *N.J.Super.* 666, 545 *A.*2d 261 (Law Div.1988) (discussing validity of such conditions), *aff'd*, 234 *N.J.Super.* 1, 559 *A.*2d 1380 (App.Div.1989). Ensuring proper access to each structure and other reasonable requirements before subdivision approval are measures that fall within the discretion of the Planning Board. Not all lots will have street frontage for each structure as did this proposed subdivision.

In some circumstances, then, a board may well conclude that separate lots will bring about a better zoning result for the community. Obviously, the Manasquan Board did just that

when, subsequent to its denial of the Tomasso application, the Board granted subdivision approval for the twenty-acre tract in the Borough that contained over 350 bungalows.

## IV

At the same time that we have recognized the wide discretion accorded local development boards, we have emphasized that sound planning is the cornerstone of principled zoning power. *Riggs v. Township of Long Beach,* 109 *N.J.* 601, 619–22, 538 *A.*2d 808 (1988) (Handler, J., concurring). Hence, the statement of reasons given by the board is critical to judicial analysis. In the planning process, planning and zoning boards must articulate, in a consistent manner, the principles that guide their actions. *Medici v. BPR Co.,* 107 *N.J.* 1, 21, 526 *A.*2d 109 (1987). A board should not be guided by inappropriate factors in its decision-making process. *See Borough of Glassboro v. Vallorosi,* 117 *N.J.* 421, 568 *A.*2d 888 (1990) (municipalities may not adopt zoning regulations that unreasonably distinguish between unrelated and related persons in residential occupancy).

In this case we believe that the Planning Board was moved in part by inappropriate factors, such as the possibility that subdivided lots would be held by absentee owners, thus exacerbating a problem of municipal regulation of summer rentals. We have repeatedly emphasized that the answer to such problems lies not in the zoning power but in the police power to insist on strict compliance with all other regulations. *See State v. Baker,* 81 *N.J.* 99, 405 *A.*2d 368 (1979) (socially disruptive behavior best regulated through use of general police power); *Kirsch Holding Co. v. Borough of Manasquan, supra,* 59 *N.J.* at 253–54, 281 *A.*2d 513 (same). The minutes of the Planning Board meeting showed clearly that it was motivated, at least in part, by the nature of the proposed ownership, with one Board member saying, "one of the problems we have with absentee landlords is the fact that when we try to take some sort of action against the owner of the property, a couple

[of problems] come up." That is clearly an inappropriate factor that undercuts the presumptive correctness of the Planning Board's decision.

In addition, as we have noted, plaintiffs really had no expectation that they would have to present a variance case before the Planning Board. Had it wished to preserve the right to relitigate the *Beers* issue on appeal, the Planning Board could have noted its intention to grant the approvals reserving that right.

Finally, the record suggests an absence of consistent principles in the Board's later grant of a large-scale subdivision of the twenty-acre parcel. We have not attempted to evaluate the reasoning suggested at oral argument by the Planning Board attorney that both the circumstances and the nature of the variances requested there were different. That review will abide the outcome of this remand.

As modified herein, the judgment of the Appellate Division is affirmed. We remand the matter to the Planning Board to permit the applicants to supplement the record before the Board, to seek a subdivision with variances under the requirements of the MLUL, and to permit the Board to adopt new findings and conclusions consistent with this opinion.

*For affirmance and modification*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.