746 A.2d 1009 (2000)
329 N.J. Super. 12
GREEN MEADOWS AT MONTVILLE, L.L.C., Plaintiff-Respondent,
v.
PLANNING BOARD OF the TOWNSHIP OF MONTVILLE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1999.
Decided February 25, 2000.
*1011 Louis P. Rago, Parsippany, for defendant-appellant (Weiner Lesniak, attorneys; Mr. Rago, on the brief).
Michael D. Sullivan, Cedar Grove, for plaintiff-respondent (Stickel, Koenig & Sullivan, attorneys; Mr. Sullivan, on the brief).
Before Judges BAIME, BROCHIN and WECKER.
*1010 The opinion of the court was delivered by BROCHIN, J.A.D.
Plaintiff Green Meadows at Montville, L.L.C. applied to defendant Planning Board of the Township of Montville for approval of a proposal to subdivide an undeveloped tract of approximately 8.5 acres into eight lots for the construction of one-family homes. The Board denied the application. Plaintiff appealed to the Law Division by an action in lieu of prerogative writs. The Law Division (Honorable Reginald Stanton, A.J.S.C.) reversed the Planning Board's decision and ordered the Board to grant plaintiff "preliminary and final major subdivision approval, variances and exceptions in accordance with [plaintiff's] plans." Defendant has appealed. For the following reasons, we affirm.
Plaintiff's tract is zoned for one-family residences. It is roughly the shape of a right-angled triangle.[1] A strip of land that was formerly part of the Morris Canal and is now owned by the Township runs along the northwestern edge of the tract, forming the hypotenuse of the triangle. Route 287 running approximately east and west in the vicinity of the tract lies immediately to the south and marks the longer of the other two sides. The easterly edge of the tract is bounded by a previously developed section of the Township. That boundary runs approximately north and south and forms the shorter leg of the "triangle." Kokora Street and Moore Road, running approximately east and west through the development that lies to the east of the subject property, both dead-end at the tract's eastern boundary. Approximately one-third of the length of the tract's eastern boundary is north of the end of Kokora Street and two-thirds, south of it.
Kokora Street is approximately 885 feet long and has a 40-foot right of way, but its improved width is only 12 to 14 feet. There is no turn-around area at its current dead-end. Plaintiff's subdivision plan calls for extending Kokora Street into the tract 850 feet and widening the paved surface of the street to a width of 20 feet along its entire length. On entering the tract, the street would run parallel to its northwesterly boundary (the "hypotenuse") for about two-thirds of the length of the street; Kokora Street would then turn slightly so that it runs east and west, terminating in a circular turn-around area that would abut the northwesterly boundary of the tract. *1012 Three building lots are to be located north of Kokora Street and five lots south of it.
Montville's zoning ordinance requires every lot to have a rectangular area of 5000 square feet within the prescribed building lines. A proposed lot, triangular in shape, which is located at the westerly apex of the tract has been designated as lot 30.04. It is adjacent to Route 287 to its south and to the former Morris Canal property to its northwest. The circular portion of the turn-around area which plaintiff's plan shows as the proposed termination of Kokora Street cuts a scallop out of the northeast corner of lot 30.04. As a consequence, although there is a 5000 square foot buildable area within lot 30.04, that area is not rectangular.
The Township zoning ordinance also requires every lot to have a depth of 150 feet. Immediately to the east of lot 30.04, adjacent to Route 287 on its south and to the extension of Kokora Street on its north, is lot 30.05. The depth of lots 30.04 and 30.05 measured at their common side-yard boundary is 106.3 feet.
The Township's subdivision design standards require a sidewalk on at least one side of a road and they limit the length of a dead-end street to 1000 feet. Plaintiff's development plan does not contemplate a sidewalk for Kokora Street and the planned extension would make the total length of the street approximately 1735 feet.
In all respects other than these, including area, coverage, and setbacks, plaintiff's development plan fully conforms to the material requirements of the Township's zoning and subdivision ordinances and regulations. If lots 30.04 and 30.05 were combined to form a single lot, reducing the subdivision to seven lots in total, there would be no need for any variance. Waivers would still be needed, however, because the length of Kokora Street, although shorter than presently planned, would still exceed 1000 feet and the street would still lack a sidewalk.
The Planning Board's resolution denying plaintiff's application for subdivision approval concludes that "good cause has not been shown to approve the application of Green Meadows at Montville, LLC (Park Lane Estates) for preliminary and final subdivision approval"; that "the strict application of the applicable Township ordinances would not result in any peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the applicant and that, therefore, the variances and waivers should not be granted"; that "the purposes of the Municipal Land Use Law and the Ordinances of Montville Township would not be advanced by a deviation from the zoning requirements, and the benefits of such deviation would not substantially outweigh any detriment"; and that "the relief sought can not be granted without substantial detriment to the public good and without substantial impairment to the intent and purpose of the zone plan and zoning ordinances of the Township of Montville."
The Board's resolution gives the following reasons for these conclusions and for its denial of the subdivision application. (1) Allowing subdivision of the tract into eight lots would permit "too intense a use for this location ... [without] benefit to the public, the Township, or its zoning scheme." (2) The extension of Kokora Street with the proposed width of 20 feet will add an additional 850 feet to its length "which will exacerbate an already existing condition with this street's cul-de-sac." (3) There are wetlands on the property; it is close to Route 287, the Morris Canal, and Township owned property. (4) The Township's master plan identifies the tract as a potential site for a neighborhood park. (5) Plaintiff's plan does not provide for a turn-around area for emergency vehicles at the end of Moore Road as requested by the Montville Fire Prevention Bureau. (6) Because of the wetlands on the property, "the Board is not satisfied" that the project "would not adversely impact the subject property and neighborhood from a *1013 drainage point of view." (7) The Morris County Planning Board has stated its preference for lot 30.04 to remain undeveloped because of its proximity to Route 287; this lot violates the 5000 square foot building area requirement and, even if that requirement could be met, there is an issue whether "such a building envelope, because of its unique shape, would be of sufficient size and proportion to allow construction of a house having reasonable proportions and in keeping with the spirit and intent of the appropriate Township ordinances." (8) Since a seven-lot subdivision could be constructed on the site with no variances required, "the Board does not view it as in the best interests of public health, safety and welfare to grant the relief requested by the applicant."
In Pizzo Mantin Group v. Township of Randolph, 137 N.J. 216, 229, 645 A.2d 89 (1994), our Supreme Court held that "The mandate under N.J.S.A. 40:55D-48 that on compliance with the subdivision ordinance and the MLUL [Municipal Land Use Law] the application `shall' be approved supports ... [the] conclusion" that "a planning board's review of a subdivision proposal, including the layout of the entire design, must be made within the framework of the standards prescribed by the subdivision and, if pertinent, the zoning ordinances." Planning Boards do not have the authority to deny an application for subdivision approval "based on considerations of the general welfare, the purposes of the Municipal Land Use Law, and sound planning." Id. at 219, 645 A.2d 89; see William M. Cox, New Jersey Zoning and Land Use Administration, § 4-3.1 at 68 (1999). If denial of a variance or waiver which is required for a proposed subdivision plan would be arbitrary or unreasonable, the need for the variance or waiver cannot justify rejection of the subdivision proposal. Pizzo Mantin Group, supra, 137 N.J. at 229, 645 A.2d 89.
Of the Planning Board's eight stated reasons for denying plaintiff's application, only two are based on the subdivision plan's deviations from the requirements of specific provisions of municipal zoning ordinances or subdivision regulations. These specific deviations are that lot 30.04 will not include a rectangular buildable area of at least 5000 square feet and that the length of Kokora Street will exceed the 1000 foot limit for a dead-end street. That Kokora Street will not have a sidewalk along at least one side and that the side-yard boundary between lots 30.04 and 30.05 is shorter than the 150 foot length required by the ordinance are not among the stated reasons for denial of the application. For the sake of completeness, however, we will consider, as the trial court did, whether the need for a waiver of the sidewalk requirement and for a depth variance justify denying approval of the subdivision plan. But see Urban v. Planning Bd. of Manasquan, 124 N.J. 651, 662, 592 A.2d 240 (1991) ("[T]he statement of reasons given by the board is critical to judicial analysis. In the planning process, planning and zoning boards must articulate, in a consistent manner, the principles that guide their actions."); see also Riggs v. Township of Long Beach, 109 N.J. 601, 619-22, 538 A.2d 808 (1988) (Handler, J., concurring).
All of the other justifications which the Board offered for its actions are generalizations which amount to a statement of the Board's opinion that the plan as submitted does not conform to a satisfactory standard of land use. Pizzo Mantin Group, supra, 137 N.J. at 219, 645 A.2d 89, holds that such generalizations do not provide a legally sustainable basis for rejection of a subdivision. The question before us, therefore, is whether the Law Division was correct in concluding that the Board acted arbitrarily or unreasonably in rejecting plaintiff's plan because it required two variances and two waivers. Cf. Urban, supra, 124 N.J. at 659, 592 A.2d 240 ("Ultimately, then, the question is whether the municipal requirement that subdivisions of previously developed land meet or be given variances from current lot size *1014 requirements is a reasonable exercise of governmental power."). The answer to that question depends in turn on whether denial of the variances and waivers was, as Judge Stanton held, arbitrary or unreasonable. Pizzo Mantin Group, supra, 137 N.J. 216, 645 A.2d 89; Goldstein v. Planning Bd. of Barnegat Light, 272 N.J.Super. 359, 639 A.2d 1161 (Law Div.1993).
We first consider the missing sidewalk. Judge Stanton ruled that enforcing the requirement for a sidewalk along at least one side of every street was unreasonable because the existing portion of Kokora Street did not have a sidewalk and, therefore, a sidewalk along that street within plaintiff's subdivision would serve no useful purpose. The record does not indicate clearly whether the Board holds a contrary view. But if it does, such a contrary view would not be arbitrary or unreasonable because the Board could reasonably conclude that having a sidewalk along the portion of the street within the subdivision would serve both utilitarian and aesthetic purposes and, also, that the municipality might eventually extend the sidewalk along the presently built part of the street. However, as Judge Stanton also noted, requiring construction of a sidewalk within the subdivision is not a ground for denying subdivision approval because plaintiff indicated that a sidewalk could and would be built if that was a condition for approval.
Plaintiff's subdivision plan as submitted cannot conform to the 1000 foot maximum limitation on the length of a dead-end street. Extending Kokora Street, which now dead-ends at the eastern boundary of the tract, is the only practical means of utilizing the property for residential building lots of a size contemplated by the 27,000 square foot minimum area requirement of the zone. The plan calls for paving the street, reducing a "hump" which is said to interfere with motorists' sight lines, increasing the width of the street from 12 or 14 to 20 feet, and providing a turn-around area wide enough to be used by emergency vehicles. These improvements will benefit householders whose properties front on the existing portion of the street as well as those whose properties will front on the extension. Finally, although the record contains speculation about the possibility that an accident might block the street and prevent an emergency vehicle from reaching a house beyond the blockage, no evidence was offered to show that that possibility poses a significant danger. The Board indicated a willingness to waive the 1000 foot minimum if lots 3.04 and 3.05 are merged, although that would still leave the length of the street above the maximum.
The Planning Board has the authority to waive the 1000 foot maximum length requirement. See N.J.S.A. 40:55D-51(b); Morris County Fair Hous. Council v. Boonton Township, 230 N.J.Super. 345, 353-355, 553 A.2d 814 (App.Div.1989); Wawa Food Market v. Planning Bd. of Ship Bottom, 227 N.J.Super. 29, 35, 545 A.2d 786 (App.Div.), certif. denied, 114 N.J. 299, 554 A.2d 853 (1988); Garofalo v. Township of Burlington, 212 N.J.Super. 458, 464, 515 A.2d 501 (Law Div.1985). We agree with Judge Stanton that "the total improvement that would result from the cul-de-sac which the developer proposes to build, coupled with what he propose[s] to do to improve the existing proportions of Kokora Street .... that road's going to be a lot better off for everybody after this subdivision, whether ... seven or eight lots ... go [ ] in." On the basis of the entire record, we also agree that denying a waiver of the 1000 foot maximum length for Kokora Street would be arbitrary and unreasonable.
The Law Division held that plaintiff is entitled to variances both under N.J.S.A. 40:55D-70(c)(1) and -70(c)(2) to cure the deviation of lot 30.04 from the requirement that it include a rectangular 5000 square foot buildable area and from the deviation of lots 30.04 and 30.05 from the 150 foot depth requirement. But a *1015 "c(1)" variance depends upon a showing of hardship resulting from the circumstances of "a specific piece of property." Plaintiff's entire 8.5 acre tract cannot be considered "a specific piece of property" within the meaning of this section. See Leimann v. Board of Adjustment of Cranford, 9 N.J. 336, 341, 88 A.2d 337 (1952); Cox, supra, § 6-2.5 at 113-14. If lots 30.04 and 30.05 are the "specific piece of property" to be considered, the "hardship" is self-created because it was plaintiff who planned the subdivision in such a way as to make those lots nonconforming. A "c(1)" variance is not available to provide relief from self-created hardship. Chirichello v. Zoning Bd. of Adjustment of Monmouth Beach, 78 N.J. 544, 553, 397 A.2d 646 (1979); Ketcherick v. Borough of Mountain Lakes Bd. of Adjustment, 256 N.J.Super. 647, 652-55, 607 A.2d 1039 (App.Div.1992); George F. Barnes Land Corp. v. Board of Adjustment of Wyckoff, 174 N.J.Super. 301, 304, 416 A.2d 431 (App.Div.1980). We therefore question whether plaintiff is entitled to "c(1)" variances, but we do not have to decide the issue because, for the following reasons, we hold that it is entitled to "c(2)" variances.
A "c(2)" variance is not necessarily unavailable because the applicant has created the condition which requires the variance. See Ketcherick, supra, 256 N.J.Super. at 656-57, 607 A.2d 1039, where this court affirmed the denial of a "c(1)" variance because the hardship was self-created, but remanded the case to the trial court to consider whether a "c(2)" variance should be granted. The reason for the distinction, we explained, is that the grant of relief under "c(2)" is not based upon "hardship." Id. at 657, 607 A.2d 1039. Instead, it
"must be rooted in the purposes of zoning and planning itself and must advance the purposes of the [Municipal Land Use Law]." [Kaufmann v. Planning Bd. for Warren, 110 N.J. 551, 562, 542 A.2d 457 (1988).] The grant must benefit the community in that "it represents a better zoning alternative for the property[,]" and may not be granted merely to advance the purposes of the owner. Id. at 563, 542 A.2d 457. Thus, the focus in a c(2) case is not whether the current zoning ordinance creates a "hardship" on the owner warranting a relaxation of the standard, but "on the characteristics of the land that present an opportunity for improved zoning and planning that will benefit the community."

[Ibid.]
In the present case, Judge Stanton found that the two needed variances for lots 30.04 and 30.05 were "trivial" and could be granted, in the language of the statute, "without substantial detriment to the public good" and without "substantially impair[ing] the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70d. That conclusion seems incontestable.
Lots 30.04 and 30.05 fail to satisfy the depth requirements of the ordinance only because the Board interpreted the applicable ordinance to require the measurement to be made at the common boundary of their side yards where a circular area is to be carved out for a turn-around area of the cul-de-sac. On average and at their centers, the lots are deeper than required by the zoning ordinance. No other lots abut either their rear or front yards.
Lot 30.04 requires an additional variance because, although it includes a buildable area of more than 5000 square feet, this area is not rectangular in shape. The lot is necessarily triangular because it is located at the narrow end of plaintiff's triangular tract. The required building envelope, if it had a rectangular shape, would impinge on the setback requirement for the rear yard, which is adjacent to the right of way of Route 287. But the total area of the lot is more than 30,200 square feet in a zone which requires a minimum acreage of 27,000 square feet and the planned location of the house on that lot is 160 feet from the house next door. Testimony was introduced *1016 that a house comparable to other houses in the development could readily be built on the lot, and there was no contrary testimony.
Under N.J.S.A. 40:55D-70(c)(2), one of the requirements for the grant of a dimensional variance is that "the benefits of the deviation would substantially outweigh any detriment...." In this instance, there is no detriment to be overcome. At the Planning Board's September 11, 1997 meeting, plaintiff was asked to modify its subdivision plan to reduce the number of lots from eight to seven. The board members wanted lot 30.04 to be left vacant or to have it combined with lot 30.05. Their basic objection to a proposed eight-lot subdivision, expressed both in the discussions on the record and in the Board's resolution, was to the "density" of the proposed land utilization. However, the applicable zoning ordinance deals with density by prescribing lot sizes, and all of the proposed lots exceed the applicable minimums. A "density" of construction consistent with the minimum lot size requirements of the zoning ordinance is not a detriment.
Granting the variances, on the other hand, would substantially advance the purposes of the MLUL. In Kaufmann v. Planning Board for Warren, 110 N.J. 551, 564, 542 A.2d 457 (1988), the Court described how the variance at issue there advanced those purposes:

N.J.S.A. 40:55D-2e contemplates as a purpose of zoning the promotion of "appropriate population densities." This area of the community was one in which the Township sought to encourage a more intense use of the land. It was discouraging large lot zoning in this area of town. Were the variance not granted, this lot would have had 325% of the norm (65,000 square feet versus 20,000 square feet in total lot area), in contrast to the 16% less than the norm requested by the variance (84 feet of frontage versus 100 feet).
The Court concluded,
We believe that on this record the benefits of zoning (more harmonious lot sizes) could be seen as substantially outweighing any detriment. Given that the establishment of appropriate population densities is a recognized purpose of zoning, the grant of this variance to permit this property to be divided into two lots conforming in respect of area, but marginally insufficient in respect of the frontage and side-yard requirements, is also consistent with the statutory objective.

[Id. at 565, 542 A.2d 457.]
We recognize that in Kaufmann the Court affirmed the Board's action. Here the Law Division reversed it. We agree, however, with the Law Division judge that, on the record in this case, the Board's refusal to recognize that granting the variances would cause no detriment and would substantially advance the purposes of the MLUL was arbitrary and unreasonable. Cf. Gougeon v. Board of Adjustment of Stone Harbor, 54 N.J. 138, 253 A.2d 806 (1969); Alpine Tower Co. v. Mayor and Council of Alpine, 231 N.J.Super. 239, 555 A.2d 657 (App.Div.1989); Morris County Fair Hous. Council, supra, 230 N.J.Super. 345, 553 A.2d 814.
Because the Planning Board is obliged to grant the only four variances and waivers required by plaintiff's subdivision plan, the plan itself must be approved. Pizzo Mantin Group, supra, 137 N.J. at 229, 645 A.2d 89. We therefore affirm the judgment of the Law Division which remanded this matter to the Planning Board and directed it to grant subdivision approval of plaintiff's proposed eight-lot subdivision upon such conditions as may be appropriate.
*1017 
NOTES
[1] A portion of the subdivision plan is reproduced at the end of this opinion.