**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0972-22

PETER FRANCO and
LINDA FRANCO,

     Plaintiff-Appellants,

v.

PLANNING BOARD OF
THE BOROUGH OF
LITTLE SILVER,

     Defendant-Respondent.

_____

Submitted November 29, 2023 – Decided January 16, 2024

Before Judges Firko and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3655-19.

Michael A. Irene, Jr., attorney for appellants.

Leckstein & Leckstein, LLC, attorneys for respondents (Mark A. Leckstein, on the brief).

PER CURIAM

Plaintiffs Peter and Linda Franco appeal from a November 1, 2022 Law Division order entered by Judge Linda Grasso Jones, dismissing their complaint and affirming defendant Little Silver Planning Board (Board)'s decision to deny their application for a variance to subdivide a lot they own. After carefully reviewing the record in light of the governing legal principles, we affirm substantially for the reasons explained in Judge Jones's thorough written decision.

I.

In April 2019, plaintiffs submitted a subdivision and variance application to the Board, which conducted a hearing on August 1, 2019. On September 5, 2019, the Board adopted a five-page resolution memorializing its decision to deny plaintiffs' application.

Plaintiffs filed a complaint in lieu of prerogative writs challenging the Board's decision. In August 2022, Judge Jones convened a trial de novo after which she affirmed the Board's denial of plaintiffs' application by order entered on November 1, 2022. The order was accompanied by a twenty-two-page written opinion.

We discern the following pertinent facts from the hearing record. Plaintiffs own real property comprising approximately 2.5 acres. A two-story

2

single-family residence and two detached family garages are located on the existing lot. The property is on a cul-de-sac with the rear of the property facing a creek. Plaintiffs sought to divide the property into two lots. One of the proposed lots, lot 8.08A, would maintain the existing house and garages. The other proposed lot, lot 8.08B, would be subject to development with a new single-family residence. Because lot 8.08A would only have 29.93 feet in frontage—less than the Little Silver ordinance requirement of 75 feet—plaintiffs sought minor subdivision approval, including an application for lot frontage variance relief pursuant to the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163. Plaintiffs presented their application to the Board as an N.J.S.A. 40:55D-70(c)(2) variance ((c)(2) variance).[1]

Plaintiffs presented expert testimony from a licensed professional engineer and planner. He testified about the benefits of plaintiffs' application. The expert opined the "proposed subdivision brings this [property] more into compliance with the R-2 zoning. As it sits now, it is a very oversized lot. Even

---

[1] Plaintiffs also argued to the trial judge that the Board should have granted their application as a "hardship" variance under N.J.S.A. 40:55D-70(c)(1). Judge Jones rejected that argument and plaintiffs have not renewed the argument on appeal.

as the lot to the south, I said before, that still is three times the required lot area, but it's certainly more in conformance with the subdivision."

The Board heard competing expert testimony from its planner. She testified the variance and subdivision would make plaintiffs' property non-conforming with the neighborhood. She stated:

> Additionally, just because the lot is larger than what's permitted in the zone doesn't mean that it's too big and needs to be subdivided. The lot area is a minimum, so anything larger than that, you know, is permitted in the zone district.
>
> [Plaintiffs' expert] did argue that the lot area was larger than all of the neighboring properties, but every other property on that street seems to have a lot frontage that meets the zone requirements. If you look at the map, all of the lots are pretty conforming, rectangular-shaped and even the other cul-de-sac lots seem to be large, around 100 feet, if not larger than the 75 feet.
>
> So I don't think this is a better planning alternative.

The Board's planner also opined that flag lots—rear lots with a narrow corridor running alongside front lots permitting access to a roadway—are "not good planning practice, generally." She explained:

> The flag part of the flag lot where it meets the road is only 29 feet wide and as given the length of the driveway, you would want two-way vehicular access, so in and out, and in addition to some buffer for the neighbors. You notice the neighbor to the west of the property, his house meets that lot line. The driveway is

4

already there, but it might be impacted further by subdividing the lot.

. . . .

Another purpose of the [MLUL] is to promote a desirable visual environment through creative development techniques and good civic design and arrangement. As I stated, most municipalities do not encourage the creation of flag lots, so I don't think that this would be promoting that municipal land use.

In relying on the expert opinion of its planner, the Board determined "the applicant failed to demonstrate positive criteria that would justify the subdivision a[t] that location with a substantial reduction in street frontage and creating a flag lot."

After a thorough review of the record, Judge Jones rejected plaintiffs' arguments and affirmed the Board's decision. Judge Jones stated:

[A]s reflected in the resolution adopted by the Board below on September 5, 2019, the Board determined, relying upon the testimony of the Board's expert planner, that plaintiffs had not met their burden [sic] of proving the positive and negative criteria applicable to a (c)(2) variance. The court in reviewing the actions of the Little Silver Planning Board thus cannot find that the decision of the Board denying plaintiff[s'] application for variance approval was arbitrary, capricious and unreasonable.

This appeal follows.

5

On appeal, plaintiffs contend Judge Jones erred in rejecting their argument that the Board's denial of their variance application was arbitrary, capricious, and unreasonable. They maintain their application satisfied the criteria for a (c)(2) variance. They also contend the Board's denial "was actually rooted in incorrect and improper factors and considerations." Specifically, plaintiffs argue the Board incorrectly assumed flag lots are not permitted, and improperly considered the question of a public access easement.

## II.

We begin our analysis by acknowledging the legal principles governing this appeal. "When reviewing a trial court's decision regarding the validity of a local board's determination," appellate courts "'are bound by the same standards as was the trial court.'" Jacoby v. Zoning Bd. of Adj. of Borough of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., LLC v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). "Thus, while we give substantial deference to findings of fact, it is essential that the board's actions be grounded in evidence in the record." Fallone Props., LLC, 442 N.J. Super. at 562. "The proper scope of judicial review is not to suggest a decision that may be better than the one made by the board, but to determine

whether the board could reasonably have reached its decision on the record." Jock v. Zoning Bd. of Adjustment of Twp. of Wall, 184 N.J. 562, 597 (2005).

Stated another way, municipal decisions enjoy a presumption of validity and will only be overturned if arbitrary and capricious or unreasonable. See ibid. Furthermore, zoning boards, "'because of their peculiar knowledge of local conditions[,] must be allowed wide latitude in the exercise of delegated discretion.'" Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (quoting Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965)). And because the MLUL "exhibits a preference for municipal land use planning by ordinance rather than by variance," ibid. at 284, a reviewing court accords less deference to the grant of a variance than it does to a denial. See Scully-Bozarth Post # 1817 of Veterans of Foreign Wars of U.S. v. Plan. Bd. of City of Burlington, 362 N.J. Super. 296, 314 (App. Div. 2003). We consider questions of law, however, de novo without deference to interpretive conclusions we believe mistaken. Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Twp. of Franklin, 233 N.J. 546, 559 (2018).

### III.

We first address plaintiffs' contention "the Board's denial of the single item of variance relief necessary to allow minor subdivision of this grossly

7

oversized lot, and thus the resulting denial of the subdivision application as a whole, is action that is arbitrary, capricious and unreasonable."  Relatedly, we address plaintiffs' contention they satisfied both the "positive" and "negative" criteria required for variance relief.

N.J.S.A. 40:55D-70(c)(2) provides, in pertinent part:

> [W]here in an application or appeal relating to a specific piece of property the purposes of this act . . . would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment, [the zoning board may] grant a variance to allow departure from regulations pursuant to article 8 [N.J.S.A. 40:55D-62 to -68.6] of this act . . . .

To obtain a (c)(2) variance, an applicant must demonstrate "that the purposes of the MLUL would be advanced, the variance can be granted without substantial detriment to the public good, the benefits of the variance will outweigh any detriment, and that the variance will not substantially impair the intent and purpose of the zoning plan and ordinance."  Jacoby, 442 N.J. Super. at 471.  Thus, "no [(c)](2) variance should be granted when merely the purposes of the owner will be advanced."  Kaufmann v. Plan. Bd. for Warren Twp., 110 N.J. 551, 563 (1988).  "The grant of approval must actually benefit the community in that it represents a better zoning alternative for the property."  Ibid.  "The focus of a [(c)](2) case," our Supreme Court stressed, must be "on

8

the characteristics of the land that present an opportunity for <u>improved</u> zoning and planning that will benefit the community." <u>Ibid.</u>

The "positive criteria" for a variance are "rooted in the purposes of the zoning ordinance rather than the advancement of the purposes of the property owner," such as "proof that the characteristics of the property present an opportunity to put the property more in conformity with development plans and advance the purposes of zoning." <u>Ten Stary Dom P'ship v. Mauro</u>, 216 N.J. 16, 30 (2013). The "negative criteria" are the resulting burdens, such as "the impact the variance will have on the specific adjacent properties affected by the permitted deviations from the ordinance." <u>Lang v. Zoning Bd. of Adjustment of Borough of N. Caldwell</u>, 160 N.J. 41, 57 (1999).

With respect to positive criteria, plaintiffs argue (c)(2) variance relief should have been granted to address their "very oversized" lot. But the Board accredited the contrary expert testimony of its planner. The Board's resolution states: "[t]he Board having considered the testimony of [its planner], a licensed planner, and [plaintiffs' expert], a licensed engineer with planning credentials and finds that [its planner's] testimony was more credible."

As Judge Jones aptly noted, "the Board is free to accept or reject the opinions of experts who testify before the Board." <u>See</u> <u>Allen v. Hopewell Twp.</u>

Zoning Bd. of Adjustment, 227 N.J. Super. 574, 581 (App. Div. 1988) ("It is within the province of the board of adjustment to accept or reject the opinions of . . . the expert planner. . . ."). Therefore, Judge Jones concluded, "[t]he Board was free to accept the testimony of its planner over the testimony of plaintiffs' expert planner." We agree with Judge Jones that the Board's decision was grounded in evidence in the record, and, therefore, was not arbitrary, capricious and unreasonable. See Jock, 184 N.J. at 597.

Plaintiffs' argument on appeal relies heavily on their interpretation of Kaufmann and Green Meadows at Montville, LLC v. Planning Bd. of Twp. of Montville, 329 N.J. Super. 12 (App. Div. 2000). In Kaufmann, the Court affirmed a (c)(2) variance that created two-nonconforming lots—each lot would have a width of 83.74 feet where 100 feet was required. 110 N.J. at 554. The proposed lots "would be similar in character to the other lots in the area" and the applicants' actual lot was "much larger and wider than those." Id. at 556. The surrounding area "consists of a mix of older and newer residential homes with the vast majority of lots having frontage widths of less than 100 feet." Id. at 555.

Furthermore, the Court noted, a (c)(2) variance would promote the general welfare, establish appropriate population densities, and provide "sufficient

10

space to meet public needs." Id. at 556. Thus, the Court affirmed the planning board's conclusion that "the benefit of this deviation would substantially outweigh any resulting harm or detriment." Ibid.

Here, unlike the situation in Kaufmann, plaintiffs' proposal would not create properties with very similar characteristics to other lots in the area. Although plaintiffs' lot is larger than the neighboring properties, all the properties on the street satisfy the frontage requirements. As noted by the Board's expert, "all of the lots are pretty conforming, rectangular-shaped and even the other cul-de-sac lots seem to be large, around 100 feet, if not larger than the 75 feet [frontage]." As noted in the Board's resolution, "lots on the water often greatly exceed the minimum required." Furthermore, the record shows there are no flag lots on the street.

It also bears noting that in Kaufmann, the Court affirmed the planning board's subdivision approval. Id. at 566. Here, plaintiffs seek to reverse the Board and the trial court. See Kramer, 45 N.J. at 296 ("Such public bodies, because of their peculiar knowledge of local conditions must be allowed wide latitude in the exercise of delegated discretion."); see also Scully-Bozarth Post # 1817 of Veterans of Foreign Wars of U.S., 362 N.J. Super. at 314 (advising

A-0972-22

that a reviewing court grants more deference to the denial of a variance than to the grant of a variance).

Plaintiffs' reliance on Green Meadows is also misplaced. In Green Meadows the planning board denied the plaintiff's proposal "to subdivide an undeveloped tract of approximately 8.5 acres into eight lots for the construction of one-family homes." 329 N.J. Super. at 15. A seven-lot subdivision could have been built without any variance relief. Id. at 17. The board's denial was reversed for being "arbitrary and unreasonable." Id. at 24. We explained:

> [The Board's] basic objection to a proposed eight-lot subdivision, expressed both in the discussions on the record and in the Board's resolution, was to the "density" of the proposed land utilization. However, the applicable zoning ordinance deals with density by prescribing lot sizes, and all of the proposed lots exceed the applicable minimums. A "density" of construction consistent with the minimum lot size requirements of the zoning ordinance is not a detriment.
>
> [Id. at 23-24.]

Unlike Green Meadows, where the application was denied for the non-variance issue of "density," here, plaintiffs' application was denied because proposed lot 8.08A would have a frontage of 29.93 feet—45.07 feet less than required by the applicable ordinance. That lot would be the only property in the neighborhood without the required frontage.

A-0972-22

We are likewise unpersuaded by plaintiffs' argument their application satisfied the "negative" criteria required for variance relief. Plaintiffs maintain the "trivial" variance "would result in no 'substantial detriment' to the public good, nor 'substantial impairment' of the intent and purpose of the zone plan and zoning ordinance." Plaintiffs also contend "that the Board's Resolution fails to make any findings whatsoever regarding the 'negative' criteria." We are satisfied the Board's findings with respect to negative criteria are couched in its decision to accept the testimony of the Board's planner over plaintiffs' expert's testimony.

Plaintiffs' expert testified:

> In terms of the negative criteria, the [land]…especially on the site for the new home on Lot B, has had a home there since 1870…It's not new or changed. In fact, the home was there physically until sometime during 2016, and was moved to its current location to the south. So a home, on this Lot B, is not something new or really different. In fact,…for…quite a long period of time that home has been there.

> The subdivision pattern [is] very much in keeping with the neighborhood, so I don't think there is a detriment in terms of the character of the neighborhood. So it's my opinion that the variance can be granted without any substantial detriment to the public good and it can be granted without…substantially impairing the intent and purposes of the Zone Plan in the Ordinance.

In contrast, the Board's planner testified:

> [Plaintiffs' expert] also stated that the application…would not negatively impact the zone district and the purposes of the M[LUL] I slightly disagree, respectfully. He stated the purpose to promote the establishment of appropriate population densities in concentrations, however, that purpose goes onto say that it will contribute to the [well-being] of persons, neighborhoods, communities and regions in the preservation of the environment.
>
> I think that this lot area, creating the frontage variance is not preserving the natural environment around it and is also not contributing to the [well-being] of the neighbors.

We reiterate—as Judge Jones aptly acknowledged— a zoning board has the choice of accepting or rejecting conflicting testimony. See Allen, 227 N.J. Super. at 581. When that decision is reasonably made, it is conclusive on appeal. See ibid. In this instance, the negative impact of plaintiffs' proposal is clearly explained. The resolution notes, "[p]roposed Lot 8.08A, which will retain the existing home, will have frontage of 29.93 feet or a little over 1/3 the requirement." Although the [current] lot is oversized, it is waterfront and "25,000 square feet is a minimum for the zone and lots on the water often greatly exceed the minimum required." Additionally, "flag lots are discouraged and prohibited in most zoning ordinances."

Thus, the record clearly shows the Board considered and rejected plaintiffs' "negative criteria" contention. Relying on their planner's expert

14

testimony, the Board determined plaintiffs failed to meet their burden of proving the positive and negative criteria applicable to a (c)(2) variance.

IV.

We turn next to plaintiffs' contention the "Board's denial was rooted in incorrect and improper factors and considerations." Specifically, plaintiffs contend the Board presumed incorrectly the Borough Ordinance does not permit flag lots. Plaintiffs also contend the "real reason" for the Board's decision was concern the New Jersey Department of Environmental Protection (DEP) would require a public access easement across their property. Neither of these contentions have merit.

It is true that there is no absolute prohibition against flag lots in Little Silver's land use ordinances. However, there is also no provision allowing flag lots. Judge Jones concluded, "[t]he lack of a provision allowing flag lots, which have insufficient frontage in the Little Silver land use ordinances constitutes a lack of authority in the Little Silver Land use ordinances for flag lots." Judge Jones explained:

> A flag lot is so named because the driveway does not have sufficient frontage on the public road. The driveway forms the "flagpole," leading back to the remainder of the property; the wider remainder is the "flag." Nothing has been presented to the court indicating that any provision in the Little Silver land

15

use ordinances allows development of property with insufficient frontage (the flagpole) as long as the property widens at the back, at the back of the driveway (the flag). Inclusion of such an ordinance provision would indicate approval of flag lots in Little Silver's land use ordinances, perhaps under certain circumstances and/or in certain land use zones. Based upon the record presented, as plaintiff[s] contend[], the court must conclude that Little Silver's land use ordinances do not provide for the development of property with insufficient frontage utilizing a flag lot configuration.

Development that is not permitted in a municipality's land use ordinances is not permitted, that is, prohibited. A flag lot is created due to a lack of available frontage. If flag lots, that is, creation of a separate lot with less frontage than is required under the applicable land use ordinance were permitted, plaintiff[s] would not have needed to file an application for variance relief. The Borough's land use ordinances for the zone require 100 feet of frontage, reduced to 75 feet of frontage on a cul-de-sac. Plaintiffs' proposed subdivision provided for 29.93 feet of frontage on the flag lot. The mere fact of the filing of plaintiffs' application requesting variance relief due to the insufficient frontage on the flag lot recognizes that development of the subject property using a flag lot is not permitted, without variance relief.

We agree with Judge Jones's conclusion that the Board's statement that Little Silver's land use ordinances do not permit flag lots with insufficient frontage was neither arbitrary, capricious, or unreasonable.

Nor are we persuaded by plaintiffs' argument "the real reason for the Board's denial was concern about a possible DEP requirement for an easement

16

across [p]laintiff[s'] property to provide public access to the Shrewsbury River." Plaintiffs maintain "the entire record of proceedings" reveals the Board denied its application because of the potential easement. They point to paragraph eighteen of the Board's resolution, which states: "[a] number of residents complained about the way the subject property is maintained, possible violation of zoning laws and worries about the public access." Plaintiffs further argue, "the words of the Board [m]embers themselves . . . show the scope of the impropriety."

The hearing transcript confirms individual Board members and interested members of the public expressed concern about a potential DEP-mandated public access on plaintiffs' property if the subdivision application was approved. But the record also shows the Board attorney forcefully cautioned the Board:

> We're not an enforcement Board. What went on in the past is not really before us. What's before us tonight is a zoning and planning issue and a variance for what is or isn't a flag lot. And . . . we have testimony from planners, so I think are very specific as to what they think the rules are. I think both parties agree that the issue is really a [(c)(2)] variance. I don't think there is any disagreement between the two planners. Now the question is whether or not the positive or the negative criteria have been met and that is for the Board to really decide.

The Board attorney reiterated:

I would instruct the Board, if they deny this application, it should not be based upon the fact where the public access is, if the Applicant has no control over it. So that should not be the . . . reason for denying the application. If they are going to deny the application, it must be on the planning aspects that have been testified to as to the positive and negative criteria.

After these instructions, a Board member indicated the public access location "has a bearing on how I vote." Again, the Board was instructed not to consider the issue. After additional discussion on the public access issue, the Board attorney repeated "[i]t is a flag lot issue. Don't get into what they have to do." The attorney continued:

To maybe answer your question, the focus of a [(c)(2)]variance is the Board needs to decide if the characteristics of the land, if the development they are improving present an opportunity for improved zoning and planning that will benefit the community. So I think that is really what you need to think about, you know, if the positive criteria and negative criteria pros and cons outweigh each other and it benefits the community versus it doesn't benefit the community.

A Board member then confirmed the Board's counsel "has made that clear that we have to not consider any other issues." After plaintiff Peter Franco testified, counsel again advised the Board, "if it's going to be denied, do not deny it on the issue of public access."

18

After the presentation on the application was completed, Board members made various comments agreeing with the Board's planner that the "flag lot is just out of character" and "there is no positive impact of this subdivision." However, one Board member explicitly stated, "[m]y concern is the building access." The Board's counsel responded, "[b]ut that is something we will not be getting into."

We stress that board members do not act individually. See Scully-Bozarth Post # 1817 of Veterans of Foreign Wars of U.S., 362 N.J. Super. at 312. Instead, "[t]he board acts as a body. The resolution provides the body's findings and conclusions, expressed by those who vote to adopt the resolution." Ibid. Furthermore, "[w]hether the final version of the resolution, as adopted, differs from any comments publicly made by one or more members voting on it, or whether one or more members did not publicly comment at all, does not detract from the resolution's status as the official statement of the board's findings and conclusions." Id. at 312-13.

"It is the resolution, and not board members' deliberations, that provides the statutorily required findings of fact and conclusions." See N.Y. SMSA, L.P. v. Bd. of Adjustment of Twp. of Weehawken, 370 N.J. Super. 319, 333-34 (App. Div. 2004) ("[R]emarks [made by an individual board member] at best reflect

the beliefs of the speaker and cannot be assumed to represent the findings of an entire Board."). Such individual comments do "not detract from the resolution's status as the official statement of the board's findings and conclusions." Scully-Bozarth Post # 1817 of Veterans of Foreign Wars of U.S., 362 N.J. Super. at 312-13.

Here, the Board's resolution explicitly states:

> The Board Attorney noted that a decision on the application would not be based on whether or not there was public access since the applicant had no discretion and needed to follow the requirements for a [Coastal Area Facility Review Act] permit, and since the Planning Board is not an enforcement agency it could not rest its decision based upon pas[t] use and activities on the subject property.

As previously noted, the resolution concludes by stating, "the Board determines that the applicant failed to demonstrate positive criteria that would justify the subdivision a[t] that location with a substantial reduction in street frontage and creating a flag lot."

We therefore conclude the Board's decision was not based on "improper considerations" as plaintiffs contend, but rather was based on sufficient credible evidence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0972-22